**Lyndall ZEZULKA, individually and as sole heir to the Estate of Henry Zezulka, Deceased, Appellant,**

v.

**Dr. Renu K. THAPAR, Appellee.**

No. 01–94–01195–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 16, 1997.

Rehearing Overruled Nov. 14, 1997.

James Stafford, Houston, for Appellant.

Mary K. Evans, Bruce D. Beach, Houston, for Appellees.

Before SCHNEIDER, C.J., and O'CONNOR and TAFT, JJ.

## OPINION ON MOTION FOR REHEARING

O'CONNOR, Justice.

We overrule the motion for rehearing, withdraw our previous opinion, substitute this opinion, and again, reverse and remand.

This case requires that we determine whether the lack of a doctor-patient relationship is a defense to a suit against a doctor for failure to warn a third person that the patient is dangerous to that person. The trial court granted a motion for summary judgment based on the doctor's lack of duty to the plaintiff because the doctor did not have a doctor-patient relationship with the third person.

Lyndall Zezulka (the "plaintiff") sued Dr. Renu K. Thapar, a psychiatrist, under the wrongful death act for negligence in causing the death of her husband. The plaintiff contends Dr. Thapar was negligent in not warning her family that her son, Freddy Ray Lilly, contemplated killing Henry Zezulka, his step-father. After initially overruling Dr. Thapar's motion for summary judgment, the trial court granted her motion for rehearing and rendered a take-nothing judgment against the plaintiff.

### Fact summary

The existence of a legal duty is a question of law for the court to decide. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). A defendant who moves for summary judgment on the plaintiff's cause of action must show there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). Summary judgment is proper when a plaintiff's allegations cannot constitute a cause of action as a matter of law. *Maranatha Temple, Inc. v. Enterprise Prods. Co.*, 893 S.W.2d 92, 98 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Because this is an appeal of a summary judgment involving only a legal issue, we assume the facts pleaded by Zezulka are true. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Maranatha*, 893 S.W.2d at 98. To the extent that the parties filed summary judgment proof to support their pleadings, we assume all the evidence of the nonmovant (here, the plaintiff) is true. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Maranatha*, 893 S.W.2d at 98.

Below are the facts as stated in the plaintiff's petition.

Dr. Thapar began treating Lilly in May 1985, when he was brought to the emergency room of Southwest Memorial Hospital. Lilly is a war veteran who served two tours of duty in Vietnam as an army intelligence specialist. Partly as a result of his war experiences, Lilly had been in and out of psychiatric hospitals and alcohol treatment facilities since his return from Vietnam. At a family gathering in May 1985, Lilly slapped his step-father, whom he later killed for no apparent reason. Family members took Lilly to the Veterans Administration Hospital, but

he walked out before he was admitted. Two days later, the family found him and took him to Memorial Southwest Hospital, where he was placed in Dr. Thapar's care.

Dr. Thapar's diagnosis of Lilly was that he was suffering from moderate to severe post-traumatic stress disorder; that he was paranoid and delusional, specifically concerning his step-father, Vietnamese, and people of African–American descent; and that he had a history of alcohol abuse, which was in remission. On or about July 26, 1985, Dr. Thapar discharged Lilly to live at home with the plaintiff and Lilly's step-father, but continued to treat Lilly as an outpatient. Treatment apparently consisted of limited psychotherapy and substantial drug therapy. Dr. Thapar prescribed daily use of Stelazine, a major tranquilizer and anti-psychotic drug, together with anti-depressants.

Dr. Thapar readmitted Lilly to Southwest Memorial Hospital on June 18, 1986, ostensibly because Lilly was having problems living in a trailer behind the plaintiff and his step-father's house. On July 4, 1986, Dr. Thapar again discharged Lilly, this time to live with another psychiatric patient, with instructions to take his medications, including the Stelazine.

Dr. Thapar continued to see Lilly as an outpatient and continued Lilly's drug treatment with Stelazine and anti-depressants. Lilly's roommate began to have his own problems, so Lilly left their apartment and began to live on the street and at an Alcoholics Anonymous facility. Lilly stopped taking his medication and became paranoid and upset with AA volunteers. He told Dr. Thapar that he wanted to react violently toward the volunteers.

Sometime in February 1987, Lilly was readmitted to Southwest Memorial Hospital under Dr. Thapar's supervision. On March 20, 1987, when Dr. Thapar determined Lilly's medication was sufficiently regulated, she discharged him. The discharge summary stated that before admission, Lilly was having flashbacks about his killing and burning bodies in Vietnam, nightmares, and strong feelings of paranoia. Lilly was instructed to continue taking his Stelazine and other medication after discharge.

Outpatient treatment with Dr. Thapar continued as before. On September 11, 1987, Lilly was readmitted to Southwest Memorial Hospital after a confrontation with his brother. He was discharged on September 30, again with instructions to take his medication.

On October 20, 1987, less than 30 days later, Lilly was readmitted. He had become increasingly suspicious, unkempt, and unclean. The day before this admission, he had gotten his brother's loaded shotgun and said he wanted to kill himself. On November 27, 1987, he was discharged.

Treatment continued as before, and on May 16, 1988, Lilly presented himself to Dr. Thapar, who admitted him to West Oaks Psychiatric Hospital. Dr. Thapar noted that when Lilly did not take his medication, he became extremely delusional and paranoid. On July 23, 1988, Dr. Thapar felt Lilly's medication was regulated and discharged him from West Oaks Psychiatric Hospital.

Over the following month, Lilly missed some of his appointments with Dr. Thapar, and she noted in her records that Lilly was avoiding his psychotherapy. Lilly stopped taking his Stelazine for several weeks. Lilly became paranoid and delusional and was again admitted to Southwest Memorial Hospital on August 23, 1988.

Both the hospital admission nurse's notes and Dr. Thapar's treatment records reflect that at this point Lilly was homicidal and wanted to kill his step-father. Neither Dr. Thapar nor Memorial Southwest Hospital communicated any of this to Lilly's family or to his step-father. The hospital records show Dr. Thapar estimated a two-to-three-week stay would be necessary for Lilly's treatment. Lilly was again medicated until he felt better.

Additional records from Memorial Southwest Hospital indicate, however, that Lilly was not taking care of personal hygiene, that he was not interacting with other patients, that he was pacing and restless, and that he was isolated and not fully participating in therapy as he had in the past. The nurses' notes on the discharge profile reflect that

Lilly was somewhat withdrawn and very confused at the time of discharge. Despite this, he was discharged on August 31, 1988, to live with a friend.

Dr. Thapar did not warn any family member, including his step-father, of the specific threats Lilly had made in the course of his hospital stay, even though the plaintiff delivered clothes to Lilly at the hospital during the stay. Dr. Thapar did not notify any family member that Lilly was being discharged, and did not warn or notify any law enforcement agency of Lilly's threats or of his discharge. The pleadings allege that Dr. Thapar fraudulently concealed Lilly's threats and dangerous condition from the date of discharge until September 28, 1988.

On September 28, 1988, Lilly killed his step-father. Lilly entered his step-father's house, took a shotgun from under the bed and waited for him. When his step-father opened the front door, Lilly shot him in the face at point-blank range. On the advice of a neighbor, Lilly called to report the killing, and was arrested. He told the police he had to kill his step-father because he thought his step-father was going to burn down Lilly's trailer.

Several of Lilly's family members tried repeatedly to reach Dr. Thapar. Hours passed. When Lilly's sister finally talked with Dr. Thapar, she told her about the death of Henry Zezulka. Initially, Dr. Thapar refused to "get involved," but was persuaded by family members to notify the Harris County Jail that Lilly was dangerous and should be isolated from other inmates.

The next day, Dr. Thapar called the criminal court to warn that Lilly should be kept out of contact with African–Americans and Asians. Dr. Thapar also went to Southwest Memorial Hospital's records facilities and dictated the discharge summary for Lilly's recent hospitalization ending August 31, 1988. The hospital's records personnel typed it, edited it together with Dr. Thapar, and inserted it in Lilly's hospital records. Dr. Thapar also obtained the assistance of the hospital records personnel to obtain the rec-

ords of Lilly's last hospitalization, which she altered.

**Appeal bond**

Dr. Thapar filed a motion for summary judgment, and the court denied the motion. On June 1, 1994, she filed a motion for rehearing of her motion for summary judgment. On October 3, the plaintiff filed an additional, but untimely, response to the rehearing. The summary judgment hearing was held on October 4. The trial court rendered judgment on October 4.

■ Dr. Thapar contends the plaintiff did not timely file her appeal bond and, therefore, we should dismiss the appeal for lack of jurisdiction. The plaintiff filed a notice of appeal (instead of an appeal bond) on October 31, which was within 30 days of the date that the court signed the judgment. Unfortunately, it was not the correct document to perfect the appeal in this case. On November 15, the plaintiff filed an appeal bond, which was the proper document to perfect the appeal.

■ We have jurisdiction of an appeal so long as the party made a bona fide attempt to invoke our jurisdiction. *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex.1994) (timely filed notice of appeal, corrected by filing of cost bond 53 days after judgment was signed, was sufficient to invoke appellate jurisdiction). We hold that the timely-filed notice of appeal was a bona fide attempt to invoke our jurisdiction. We deny Dr. Thapar's motion to dismiss the appeal.[1]

**Interlineation in the judgment**

In reply point one to the original brief, Dr. Thapar argues that the plaintiff is estopped from complaining of a judgment that she induced the trial court to render. Dr. Thapar contends that the plaintiff withdrew her opposition to Dr. Thapar's motion for summary judgment at the hearing on the motion, and the court noted that in its judgment. The final judgment provides:

1. Dr. Thapar also contends the plaintiff did not timely file her appellate brief. This Court granted the plaintiff's motion to extend time to file her appellate brief until April 10, 1995. The plaintiff filed her brief on April 10, 1995. We find no merit in Dr. Thapar's argument.

On this day came on to be heard Defendant RENU K THAPAR, M.D.'S Motion for Summary Judgment, and the Court, after considering such Motion and having reviewed the file herein *[and the (plaintiff) having withdrawn his (sic) opposition]*, is of the opinion that the motion is meritorious and should be sustained.

It is, therefore, ORDERED, ADJUDGED and DECREED that Defendant RENU K THAPAR, M.D.'S Motion for Summary Judgment is hereby GRANTED; that Plaintiff take nothing from Defendant; and that judgment be entered in favor of Defendant RENU K. THAPAR, M.D.

Further, it is ORDERED, ADJUDGED AND DECREED that all costs be taxed against Plaintiff.

SIGNED this 4 day of October, 1994.

The italicized and bracketed section of the judgment was handwritten, with the initials S.L. underlined next to it.

During oral argument before this Court, the plaintiff's attorney contended that he did not tell the trial judge that he withdrew his opposition. The plaintiff's attorney said that he told the trial judge he wanted to resolve through summary judgment the legal issue of whether the psychiatrist owed a duty to a third party, rather than wait until after trial.

There is nothing in the record before us other than the final judgment that indicates the plaintiff withdrew her opposition to the motion for summary judgment. We note that, at the time of the summary judgment hearing, the plaintiff had filed a response to Dr. Thapar's motion for summary judgment, in which she argued the motion should not be granted. Also in the record is a "certificate of conference to motion for rehearing on defendant's motion for summary judgment." In that document, Dr. Thapar's attorney notes that a conference was held on the merits of the motion for summary judgment and "this matter has been discussed with opposing counsel and they are OPPOSED to this motion."

Because we did not know when the interlineation was made or the circumstances surrounding its entry, we abated the appeal and directed the trial court to determine the meaning of the interlineation. *See West Texas State Bank v. General Resources Mgmt. Corp.,* 717 S.W.2d 766, 767 (Tex.App.—Austin 1986, no writ). After the case was abated, the trial court held a hearing and made findings of fact, which were brought to this Court in a supplemental transcript.

The trial court found that the plaintiff did not consent to the rendition of the summary judgment and that the plaintiff told the trial court, as he told this Court, that he wanted the legal issue resolved by summary judgment. We have read the statement of facts from that hearing, and the record supports the trial court's findings.

We overrule Dr. Thapar's reply point one.

### No doctor-patient relationship

In point of error one, the plaintiff contends the trial court erred in granting Dr. Thapar's motion for summary judgment and in finding that Dr. Thapar had no duty to Lilly's step-father, because there was no doctor-patient relationship between Dr. Thapar and Lilly's step-father. Dr. Thapar's motion for rehearing characterized the plaintiff's cause of action as a medical malpractice suit. Dr. Thapar's motion reads in part:

> This is a medical malpractice case in which the Plaintiff alleges the Defendant Doctor was negligent in failing to warn Plaintiff's decedent the Defendant's patient (Plaintiff's son) threatened to harm the decedent. The basis of Defendant's Motion for Summary Judgment is that Defendant owed no duty to Plaintiff's decedent because there was no physician/patient relationship.

The plaintiff's petition alleged a common-law negligence action against Dr. Thapar for causing the death of plaintiff's spouse, who was not a patient of Dr. Thapar. All of the cases cited by Dr. Thapar involve suits for medical malpractice, which require a doctor-patient relationship. *See, e.g., Bird v. W.C.W.,* 868 S.W.2d 767 (Tex.1994); *Metzger v. Sebek,* 892 S.W.2d 20 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Wilson v. Winsett,* 828 S.W.2d 231 (Tex.App.—Amarillo 1992, writ denied); *Fought v. Solce,* 821

S.W.2d 218 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The plaintiff's suit did involve a medical malpractice action.

In a supplemental brief filed after oral argument, Dr. Thapar relies on this Court's opinion in *Flynn v. Houston Emergicare, Inc.*, 869 S.W.2d 403 (Tex.App.—Houston [1st Dist.] 1993, writ denied). The facts of *Flynn* are similar to those in this case but are distinguishable in a significant way. In *Flynn*, the plaintiff alleged that the doctor was negligent in treating a patient who had recently ingested cocaine. The plaintiff argued that the doctor breached a duty to the public by not keeping the patient in the hospital or warning him not to drive until the effects of the cocaine wore off. We held that the doctor had no general duty to the plaintiff *as a member of the public*. *Id.* at 405–06.

Those are not the facts here. In this case, the plaintiff alleged Dr. Thapar knew of Lilly's threat to kill his step-father. We are not asked in this case if a doctor may be responsible to the public at large. Because Dr. Thapar allegedly knew of a specific threat to a specific person, she may have had a duty to warn that person, based on facts to be developed at trial.[2]

■ In 1979, the Legislature created an exception to the rules of confidentiality between patient and physician and provided guidelines to health care professionals regarding a patient who might be dangerous to himself or to others. *See* TEX.REV.CIV.STAT. art. 5561h, § 4(b)(2) (repealed April 29, 1991),[3] now TEX. HEALTH & SAFETY CODE § 611.004 (1996) (effective September 1, 1991). Because this event occurred in 1988, it is governed by TEX.REV.CIV.STAT. art. 5561h, § 4(b)(2) (repealed). Article 5561h, § 4(b)(2) permitted a health care professional to disclose confidential information to

> medical or law enforcement personnel where the professional determines that there is a probability of imminent physical injury by the patient/client to himself or to others, or where there is a probability of immediate mental or emotional injury to the patient/client.[4]

By enacting article 5561h, § 4(b)(2), the Legislature anticipated that a doctor or other health care professional might acquire information from treatment about a threat to another person. In such cases, there is no confidential relationship that prevents the disclosure of the information.

■ We hold that the affirmative defense that Dr. Thapar had no doctor-patient relationship with Henry Zezulka is not a defense to the cause of action pled by the plaintiff. The defense of no doctor-patient relationship was the only ground contained in Dr. Thapar's motion for summary judgment.[5]

---

2. The duty to warn a nonpatient of a patient's threats is often called the *Tarasoff–Thompson* duty after *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 25–27, 551 P.2d 334, 345–47 (1976), and *Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980). At least four other Texas courts have addressed the application of this duty. *See Limon v. Gonzaba*, 940 S.W.2d 236, 238–41 (Tex. App.—San Antonio 1997, writ denied); *Kehler v. Eudaly*, 933 S.W.2d 321, 329–32 (Tex.App.—Fort Worth 1996, writ denied); *Kerrville State Hosp. v. Clark*, 900 S.W.2d 425, 435–36 (Tex.App.—Austin 1995), *reversed on other grounds*, 923 S.W.2d 582 (Tex.1996) (reversed court of appeals on grounds of sovereign immunity); *Williams v. Sun Valley Hosp.*, 723 S.W.2d 783, 785–86 (Tex.App.—El Paso 1987, writ ref'd n.r.e.).

3. Act effective Aug. 27, 1979, 66th Leg., R.S., ch. 239, 1979 Tex.Gen.Laws 512, *amended by* Act effective Sept. 1, 1983, 68th Leg., R.S., ch. 511, sec. 4, 1983 Tex.Gen.Laws 2970, 2974–75.

4. Current TEX. HEALTH & SAFETY CODE § 611.004 adopts the same standard as stated in article 5561h, § 4(b)(2). Section 611.004(a)(2) provides a professional may disclose confidential information:

> to medical or law enforcement personnel if the professional determines that there is a probability of imminent physical injury by the patient to the patient or others or there is a probability of immediate mental or emotional injury to the patient.

5. In her motion for rehearing, Dr. Thapar argued that in our original opinion we overlooked other grounds from her motion for summary judgment on which we could affirm. However, the other grounds were not included in either of her motions for summary judgment (the original motion and a motion to reconsider that motion). Instead, they were included in a reply Dr. Thapar filed to the plaintiff's response to the motion for summary judgment. The Supreme Court has held that the grounds for a summary judgment *must* be contained in the motion for summary judgment. *McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex.1993) (trial court could not

A summary judgment that does not address the plaintiff's cause of action cannot support summary judgment on that cause of action. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

We sustain point of error one.

We reverse and remand the cause for further proceedings.

consider grounds stated in the brief filed with the        motion for summary judgment).