**Renu K. THAPAR, M.D., Petitioner,**

v.

**Lyndall ZEZULKA, Respondent.**

**No. 97–1208.**

Supreme Court of Texas.

Argued Nov. 18, 1998.

Decided June 24, 1999.

Mary Kathleen Evans, Houston, for petitioner.

James Stafford, Barney L. McCoy, Houston, for respondent.

Justice ENOCH delivered the opinion for a unanimous court.

The primary issue in this case is whether a mental-health professional can be liable in negligence for failing to warn the appropriate third parties when a patient makes specific threats of harm toward a readily identifiable person. In reversing the trial court's summary judgment, the court of appeals recognized such a cause of action.[1] Because the Legislature has established a policy against such a common-law cause of action, we refrain from imposing on mental-health professionals a duty to warn third parties of a patient's threats. Accordingly, we reverse the court of appeals' judgment and render judgment that Zezulka take nothing.

Because this is an appeal from summary judgment, we take as true evidence favorable to Lyndall Zezulka, the nonmovant.[2] Freddy Ray Lilly had a history of mental-health problems and psychiatric treatment. Dr. Renu K. Thapar, a psychiatrist, first treated Lilly in 1985, when Lilly was brought to Southwest Memorial Hospital's emergency room. Thapar diagnosed Lilly as suffering from moderate to severe post-traumatic stress disorder, alcohol abuse, and paranoid and delusional beliefs con-

cerning his stepfather, Henry Zezulka, and people of certain ethnic backgrounds. Thapar treated Lilly with a combination of psychotherapy and drug therapy over the next three years.

For the majority of their relationship, Thapar treated Lilly on an outpatient basis. But on at least six occasions Lilly was admitted to Southwest Memorial Hospital, or another facility, in response to urgent treatment needs. Often the urgency involved Lilly's problems in maintaining amicable relationships with those with whom he lived. Lilly was also admitted on one occasion after threatening to kill himself. In August 1988, Lilly agreed to be admitted to Southwest Memorial Hospital. Thapar's notes from August 23, 1988, state that Lilly "feels like killing" Henry Zezulka. These records also state, however, that Lilly "has decided not to do it but that is how he feels." After hospitalization and treatment for seven days, Lilly was discharged. Within a month Lilly shot and killed Henry Zezulka.

Despite the fact that Lilly's treatment records indicate that he sometimes felt homicidal, Thapar never warned any family member or any law enforcement agency of Lilly's threats against his stepfather. Nor did Thapar inform any family member or any law enforcement agency of Lilly's discharge from Southwest Memorial Hospital.

Lyndall Zezulka, Henry's wife and Lilly's mother, sued Thapar for negligence resulting in her husband's wrongful death. Zezulka alleged that Thapar was negligent in diagnosing and treating Lilly and negligent in failing to warn of Lilly's threats toward Henry Zezulka. It is undisputed that Thapar had no physician-patient relationship with either Lyndall or Henry Zezulka. Based on this fact, Thapar moved for summary judgment on the ground that Zezulka had not stated a claim for medical negligence because Thapar owed no duty

---

**1.** 961 S.W.2d 506.

**2.** *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

to Zezulka in the absence of a doctor-patient relationship. The trial court overruled Thapar's motion.

Thapar filed a motion for rehearing of her summary judgment motion based largely on our decision in *Bird v. W.C.W,* in which we held that no duty runs from a psychologist to a third party to not negligently misdiagnose a patient's condition.[3] In light of *Bird,* the trial court reconsidered and granted summary judgment for Thapar. Zezulka appealed.

After concluding that Zezulka was not estopped from complaining about the trial court's judgment by her agreement to resolve the duty question through summary judgment, a conclusion with which we agree, the court of appeals reversed the trial court's judgment.[4] The court of appeals held that the no-duty ground asserted in Thapar's motion for summary judgment was not a defense to the cause of action pleaded by Zezulka.[5]

■ To decide this case we must determine the duties a mental-health professional owes to a nonpatient third party. Zezulka stated her claims against Thapar in negligence. Liability in negligence is premised on duty, a breach of which proximately causes injuries, and damages resulting from that breach.[6] Whether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question.[7] If there is no duty, there cannot be negligence liability.[8]

3. 868 S.W.2d 767 (Tex.1994).

4. *See* 961 S.W.2d at 510–11.

5. *See id.* at 511.

6. *See Bird,* 868 S.W.2d at 769 (citing *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990)).

7. *See St. John v. Pope,* 901 S.W.2d 420, 424 (Tex.1995); *Bird,* 868 S.W.2d at 769.

8. *See Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.1998); *St. John,* 901 S.W.2d at 424;

In her second amended petition Zezulka lists seventeen particulars by which she alleges Thapar was negligent. But each allegation is based on one of two proposed underlying duties: (1) a duty to not negligently diagnose or treat a patient that runs from a psychiatrist to nonpatient third parties; or (2) a duty to warn third parties of a patient's threats. In her motion for summary judgment Thapar asserted that she owed Zezulka no duty. Thus, we must determine if Thapar owed Zezulka either of these proposed duties.

## NEGLIGENT DIAGNOSIS AND TREATMENT

■ First, we consider Zezulka's allegations that Thapar was negligent in her diagnosis and treatment of Lilly's psychiatric problems. Among other claims, Zezulka alleged that Thapar was negligent in releasing Lilly from the hospital in August 1988, in failing to take steps to have Lilly involuntarily committed, and in failing to monitor Lilly after his release to ensure that he was taking his medication. All of these claims are based on Thapar's medical diagnosis of Lilly's condition, which dictated the treatment Lilly should have received and the corresponding actions Thapar should have taken.[9] The underlying duty question here is whether the absence of a doctor-patient relationship precludes Zezulka from maintaining medical negligence claims against Thapar based on her diagnosis and treatment of Lilly.

In *Bird* we held that no duty runs from a psychologist to a third party to not negligently misdiagnose a patient's condition.[10]

*Graff v. Beard,* 858 S.W.2d 918, 919 (Tex. 1993).

9. *See, e.g., Van Horn,* 970 S.W.2d at 545.

10. *Bird,* 868 S.W.2d at 769–70 (citing *Vineyard v. Kraft,* 828 S.W.2d 248, 251 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Wilson v. Winsett,* 828 S.W.2d 231, 232–33 (Tex.App.—Amarillo 1992, writ denied); *Fought v. Solce,* 821 S.W.2d 218, 220 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Dominguez v. Kelly,* 786 S.W.2d 749 (Tex.App.—El Paso 1990, writ denied)).

Since *Bird,* we have had occasion to consider several permutations of this same duty question.[11] *Bird* and our post-*Bird* writings answer definitively the first duty question presented by the facts before us: Thapar owes no duty to Zezulka, a third party nonpatient, for negligent misdiagnosis or negligent treatment of Lilly.[12] Accordingly, Thapar was entitled to summary judgment on all of the claims premised on Zezulka's first duty theory.

## FAILURE TO WARN

■ Second, we consider Zezulka's allegations that Thapar was negligent for failing to warn either the Zezulkas or law enforcement personnel of Lilly's threats. We are not faced here with the question of whether a doctor owes a duty to third parties to warn a patient of risks from treatment which may endanger third parties.[13] Instead, we are asked whether a mental-health professional owes a duty to directly warn third parties of a patient's threats.

The California Supreme Court first recognized a mental-health professional's duty to warn third parties of a patient's threats in the seminal case *Tarasoff v. Regents of University of California.*[14] The court of appeals here cited *Tarasoff* in recognizing a cause of action for Thapar's failure to warn of her patient's threats.[15] But we have never recognized the only underlying duty upon which such a cause of action could be based—a mental-health professional's duty to warn third parties of a patient's threats. Without considering the effect of differences in the development of California and Texas jurisprudence on the outcome of this issue, we decline to adopt a duty to warn now because the confidentiality statute governing mental-health professionals in Texas makes it unwise to recognize such common-law duty.

■ The Legislature has chosen to closely guard a patient's communications with a mental-health professional. In 1979, three years after *Tarasoff* issued, the Legislature enacted a statute governing the disclosure of communications during the course of mental-health treatment.[16] The statute classifies communications between mental-health "professional[s]" and their "patient[s]/client[s]" as confidential and prohibits mental-health professionals from disclosing them to third parties unless an exception applies.[17]

11. *See Van Horn,* 970 S.W.2d at 543; *Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 77–79 (Tex.1997); *Krishnan v. Sepulveda,* 916 S.W.2d 478, 482 (Tex.1995); *see also Praesel v. Johnson,* 967 S.W.2d 391, 392 (Tex.1998); *Cathey v. Booth,* 900 S.W.2d 339, 342 (Tex. 1995).

12. *See Van Horn,* 970 S.W.2d at 545; *Trevino,* 941 S.W.2d at 79; *Krishnan,* 916 S.W.2d at 482; *Bird,* 868 S.W.2d at 770.

13. *See Gooden v. Tips,* 651 S.W.2d 364, 365–66 (Tex.App.—Tyler 1983, no writ) (holding doctor owed duty to third party to warn patient not to drive after prescribing the drug Quaalude to patient); *see also Flynn v. Houston Emergicare, Inc.,* 869 S.W.2d 403, 405–06 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (holding doctor owed no duty to third party to warn patient not to drive after patient was treated for cocaine use because doctor did not create impairment that resulted in injury).

14. 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 345–47 (1976).

15. 961 S.W.2d at 511 n. 2. The court of appeals also cited four Texas cases that considered whether to adopt a *Tarasoff* duty but did not. *See* 916 S.W.2d at 511 n. 2 (citing *Limon v. Gonzaba,* 940 S.W.2d 236, 238–41 (Tex.App.—San Antonio 1997, writ denied); *Kehler v. Eudaly,* 933 S.W.2d 321, 329–32 (Tex.App.—Fort Worth 1996, writ denied); *Kerrville State Hosp. v. Clark,* 900 S.W.2d 425, 435–36 (Tex.App.—Austin 1995), *rev'd on other grounds,* 923 S.W.2d 582 (Tex.1996); *Williams v. Sun Valley Hosp.,* 723 S.W.2d 783, 785–86 (Tex.App.—El Paso 1987, writ ref'd n.r.e.)).

16. *See* Act of May 9, 1979, 66th Leg., R.S., ch. 239, 1979 Tex. Gen. Laws 512 (amended 1991) (current version at TEX. HEALTH & SAFETY CODE § 611.002 (1996)).

17. *See* § 2(a), 1979 Tex. Gen. Laws at 513.

Zezulka complains that Thapar was negligent in not warning members of the Zezulka family about Lilly's threats. But a disclosure by Thapar to one of the Zezulkas would have violated the confidentiality statute because no exception in the statute provides for disclosure to third parties threatened by the patient.[18] We considered a similar situation in *Santa Rosa Health Care Corp. v. Garcia*,[19] in which we concluded there is no duty to disclose confidential information when disclosure would violate the confidentiality statute.[20] The same reasoning applies here. Under the applicable statute, Thapar was prohibited from warning one of his patient's potential victims and therefore had no duty to warn the Zezulka family of Lilly's threats.

Zezulka also complains that Thapar was negligent in not disclosing Lilly's threats to any law enforcement agency. There is an exception in the confidentiality statute that provides for disclosure to law enforcement personnel in certain circumstances.[21] The statute, however, *permit*s these disclosures but does not *require* them:

(b) Exceptions to the privilege of confidentiality, in other than court proceedings, *allowing* disclosure of confidential information by a professional, exist only to the following: ...

(2) to medical or law enforcement personnel where the professional determines that there is a probability of imminent physical injury by the patient/client to himself or to others, or where there is a probability of immediate mental or emotional injury to the patient/client.... [22]

The term "allowing" in section 4(b), quoted above, makes clear that disclosure of confidential information under any of the statute's exceptions is permissive but not mandatory. Imposing a legal duty to warn third parties of patient's threats would conflict with the scheme adopted by the Legislature by making disclosure of such threats mandatory.

■ We consider legislative enactments that evidence the adoption of a particular public policy significant in determining whether to recognize a new common-law duty.[23] For example, in recognizing the existence of a common-law duty to guard children from sexual abuse, we found persuasive the Legislature's strongly avowed policy to protect children from abuse.[24] The statute expressing this policy, however, makes the reporting of sexual abuse mandatory[25] and makes failure to report child abuse a crime.[26] Further, under the statute, those who report child abuse in good faith are immune from civil and crim-

**18.** *See* § 4, 1979 Tex. Gen. Laws at 514.

**19.** 964 S.W.2d 940, 941 (Tex.1998) (involving disclosure of HIV test under Tex.Rev.Civ. Stat. art. 4419b–1, § 9.03).

**20.** *Id.* at 944.

**21.** *See* § 4(b), 1979 Tex. Gen. Laws at 514.

**22.** *See* § 4, 1979 Tex. Gen. Laws at 514 (emphasis added). Current Tex. Health & Safety Code § 611.004(a)(2) adopts the same standard:

(a) A professional *may* disclose confidential information only: ...
(2) to medical or law enforcement personnel if the professional determines that there is a probability of imminent physical injury by the patient to the patient or others or there is a probability of immediate men-

tal or emotional injury to the patient ... (emphasis added).

**23.** *See Gibbs v. Jackson*, 990 S.W.2d 745, 747 (Tex.1999); *Smith v. Merritt*, 940 S.W.2d 602, 604–05 (Tex.1997) (citing *Graff*, 858 S.W.2d at 919).

**24.** *See Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 291 (Tex.1996).

**25.** Tex. Fam.Code § 261.101(a) states:

A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person *shall* immediately make a report as provided by this subchapter. (emphasis added).

**26.** *See* Tex. Fam.Code § 261.109.

inal liability.[27] Thus, imposing a common law duty to report was consistent with the legislative scheme governing child abuse.

The same is not true here. The confidentiality statute here does not make disclosure of threats mandatory nor does it penalize mental-health professionals for not disclosing threats. And, perhaps most significantly, the statute does not shield mental-health professionals from civil liability for disclosing threats in good faith. On the contrary, mental-health professionals make disclosures at their peril.[28] Thus, if a common-law duty to warn is imposed, mental-health professionals face a Catch–22. They either disclose a confidential communication that later proves to be an idle threat and incur liability to the patient, or they fail to disclose a confidential communication that later proves to be a truthful threat and incur liability to the victim and the victim's family.

The confidentiality statute here evidences an intent to leave the decision of whether to disclose confidential information in the hands of the mental-health professional. In the past, we have declined to impose a common-law duty to disclose when disclosing confidential information by a physician has been made permissible by statute but not mandatory.[29] We have also declined to impose a common-law duty after determining that such a duty would conflict with the Legislature's policy and enactments concerning the employment-at-will doctrine.[30] Our analysis today is consistent with the approach in those cases.

Because of the Legislature's stated policy, we decline to impose a common law duty on mental-health professionals to warn third parties of their patient's threats. Accordingly, we conclude that Thapar was entitled to summary judgment because she owed no duty to Zezulka, a third-party nonpatient. We reverse the court of appeals' judgment and render judgment that Zezulka take nothing.

---

**27.**  *See* Tex. Fam.Code § 261.106.

**28.**  *See* § 5, 1979 Tex. Gen. Laws at 514.

**29.**  *See Praesel,* 967 S.W.2d at 396–98.

**30.**  *See Austin* v. Austin v. HealthTrust, Inc.—The Hosp. Co., 967 S.W.2d 400, 403 (Tex. 1998); *see also Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723, 724–25 (Tex.1990).