Laurence **ABRAMS**, Petitioner,

v.

Donald Paul **JONES**, Respondent.

No. 99–0184.

Supreme Court of Texas.

Argued Oct. 12, 1999.

Decided July 6, 2000.

Dennis M. Beck, Spencer Edward Dunn, Houston, for Petitioner.

Marshall Davis Brown, Patricia A. Batton, Paul David Lester, Lynn S. Kuriger, Houston, for Respondent.

Justice OWEN delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice ABBOTT, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES join.

This case presents issues of statutory construction. We are called upon to determine if either section 153.072 of the Family Code or section 611.0045 of the Health and Safety Code allows a parent to demand access to detailed notes of his or her child's conversations with a mental health professional when that parent is not acting on behalf of the child or when the mental health professional believes that releasing the information would be harmful to the child's physical, mental, or emotional health. The Legislature has balanced a child's need for effective treatment and a parent's rights and has imposed some limits on a parent's right of access to confidential mental health records. Accordingly, we reverse the judgment of the court of appeals and render judgment that Jones take nothing.

## I

The child whose records are at issue is Karissa Jones. Her parents, Donald and Rosemary Jones, divorced when she was about seven years old. Both parents remarried sometime before the present controversy erupted, and Rosemary Jones is now Rosemary Droxler. In the original decree, Karissa's parents were appointed joint managing conservators of her and her younger sister. Two years after the divorce, her father initiated further court proceedings to become the sole managing conservator of his daughters. Litigation ensued for two more years. Karissa's parents ultimately agreed to a modification of the original order, but both parents were retained as joint managing conservators. The modified decree gave Jones certain rights of access to his children's psychological records.

Several months after the modification proceedings were concluded, Rosemary Droxler sought the professional services of a psychologist, Dr. Laurence Abrams, for Karissa. The uncontroverted evidence is that Karissa, who by this time was eleven years old, was agitated and showed signs of sleeplessness and worry. At the time the trial court heard this case, Abrams had seen Karissa six times for about fifty minutes on each occasion.

At the beginning of Abrams's first consultation with Karissa, she was reluctant to talk to him. When Abrams explored that reluctance with her, she told him that she was concerned that he would relate what she had to say to her parents. Abrams responded that he would have to provide a report to her parents, but that he could give them a general description of what was discussed without all the specifics.

Abrams and Karissa reached an understanding about what he would and would not tell her parents, and he was thereafter able to establish a rapport with her.

Shortly after Karissa began seeing Abrams, her father (Jones) and his legal counsel met with Abrams and requested that he release all of her records. Abrams gave Jones and his counsel a verbal summary of information, sharing with them the basic subject matter of his consultations with Karissa. Abrams related that Karissa had told him that Jones's new wife (who formerly was Karissa's nanny) had said to Karissa that when she turned twelve, she would have to choose where she lived. Karissa told Abrams that she was afraid there would be more conflict in court between her parents because of this choice. Abrams described Karissa as in a "panic" when he first saw her over what she believed to be her impending decision and an ensuing battle between her parents. Abrams also told Jones that Karissa had said that she leaned toward choosing to live with her father and that she was at times unhappy living with her mother because her mother was away from home more than Karissa liked.

After Abrams had related this information about his sessions with Karissa, Jones told Abrams that no conversations of the nature Abrams had described had occurred between Jones and Karissa or between Karissa and her stepmother. At some point in the dialogue among Abrams, Jones, and Jones's attorney, Abrams either agreed with Jones's counsel or said in response to a question from counsel that Karissa's mother had taken Karissa to see Abrams "to get a leg up on" Jones in court.

A few days after the meeting among Jones, his counsel, and Abrams, Jones's counsel again pressed for Abrams's records in two letters to Abrams. Abrams responded verbally and in writing that releasing the detailed notes about his conversations with Karissa would not be in her best interest. Abrams offered to give his notes to any other psychologist that Jones might choose to replace Abrams as Karissa's counselor, and Abrams explained that Karissa's new psychologist could then determine whether it was in Karissa's best interest to give Abrams's notes to Jones. Jones did not seek another counselor for Karissa, and Abrams did not release his notes to Jones. Abrams continued to treat Karissa until this suit was filed by Jones to compel Abrams to release his notes. The record is silent as to whether Abrams was to continue treatment after this suit was resolved.

Droxler, Karissa's mother, entered an appearance in the suit against Abrams, and she agreed with Abrams that neither parent should have access to his notes of conversations with Karissa. A hearing was held before the trial court. Abrams testified that a sense of protection and closeness is an integral part of psychotherapy and that without some expectation of confidentiality, Karissa would not have opened up to him. He said that Karissa had several discussions with him about the confidentiality of their sessions. Abrams testified that in his opinion the release to either parent of his detailed notes of what Karissa had said was not in her best interest.

Jones took the position in the trial court that as a parent, he was unconditionally entitled to see all of Abrams's records regarding his daughter. He further represented to the trial court that based on his conversations with Karissa, he was of the opinion that she did not object to the release of her records. Abrams testified, however, that Karissa had asked him not to reveal the details of their conversations, and that during the week before the hearing, her mother delivered a note which Karissa had written to Abrams again asking that he maintain the confidentiality of their discussions.

Abrams's detailed notes about what Karissa had told him during his professional consultations with her were provid-

ed to the trial court. The court, however, stated on the record at the conclusion of the hearing that it had not reviewed them and did not intend to. There is no indication that it ever did so.

The trial court held that Jones was entitled to Abrams's notes. Abrams appealed, and Karissa's mother (Droxler) filed briefing in the court of appeals in support of Abrams's position. The court of appeals affirmed the trial court's judgment with one justice dissenting. 983 S.W.2d at 377. We granted Abrams's petition for review, which was supported by Karissa's mother.

There are three questions of statutory construction that we must decide. They are (1) whether section 153.073 of the Family Code gives a divorced parent greater rights of access to mental health records than parents in general have under chapter 611 of the Texas Health and Safety Code, (2) whether section 611.0045(b) of the Health and Safety Code allows a professional to deny a parent access to portions of mental health records if the professional concludes that their release would harm the child, and (3) whether a parent is always deemed to be acting on behalf of his or her child when requesting mental health records.

## II

As indicated above, the first question that we must resolve is whether section 153.073 of the Family Code or chapter 611 of the Health and Safety Code governs this matter. TEX. FAM.CODE § 153.073; TEX. HEALTH & SAFETY CODE §§ 611.001 to 611.008. We conclude that chapter 611 provides the framework within which this case must be decided.

■ Section 153.073 of the Family Code addresses parental rights upon dissolution of the parents' marriage to one another. It provides that unless a court orders otherwise, a parent who is appointed a conservator "has at all times the right ... as specified by court order ... of access to medical, dental, psychological,

and educational records of the child." TEX. FAM.CODE 153.073(a)(2). Jones contends that this section of the Family Code mandates that a parent who is appointed a conservator has access at all times to all psychological records of the child. We disagree.

We interpret section 153.073 to ensure that a court may grant a parent who is divorced and who has been named a conservator the same rights of access to his or her child's psychological records as a parent who is not divorced. We do not interpret section 153.073 to override the provisions of chapter 611 of the Health and Safety Code that specifically address parents' rights to the mental health records of their children. The legislative history of section 153.073 indicates that it was enacted to equalize the rights of nonmanaging-conservator parents in comparison to managing-conservator parents. *See* HOUSE COMM. ON JUDICIAL AFFAIRS, BILL ANALYSIS, Tex. H.B. 1630, 73d Leg., R.S. (1993) (explaining that this provision was needed to remedy (1) previous limitations on nonmanaging conservators during periods of possession, when the child might need health care, and (2) the fact that managing conservators were not required to consult with the other parent about important decisions affecting the child's health, education, or welfare). The Legislature did not intend in section 153.073 to give greater rights to divorced parents than to parents who are not divorced. We turn to chapter 611 of the Health and Safety Code.

## III

The Legislature has determined that a patient's right of access to his or her own mental health records is not absolute. Section 611.0045 of the Health and Safety Code says that a "professional may deny access to any portion of a record if the professional determines that release of that portion would be harmful to the patient's physical, mental, or emotional

health." Tex. Health & Safety Code § 611.0045(b).

There are, however, checks and balances on a professional's decision not to disclose portions of a mental health record to a patient. A patient may select another professional for treatment of the same or related condition, and the professional denying access must allow the newly retained professional to examine and copy the records that have not been released to the patient. *Id.* § 611.0045(e). The newly retained professional may then decide whether to release the records to the patient.

There are provisions in chapter 611 of the Health and Safety Code that deal specifically with the mental health records of a minor. Section 611.0045(f) provides that the "content of a confidential record shall be made available to a [parent] who is acting on the patient's behalf." *Id.* § 611.0045(f).[1] Jones contends that a parent necessarily acts on behalf of his or her child when seeking access to a child's mental health records under section 611.0045(f). The court of appeals agreed. It held that "by requesting that Abrams turn over Karissa's mental health records, Jones was necessarily 'acting on behalf' of Karissa as contemplated by section 611.0045(f) of the Code." 983 S.W.2d at 381.

■ In construing a statute, we must attempt to give effect to every word and phrase if it is reasonable to do so. *See City of Amarillo v. Martin,* 971 S.W.2d 426, 430 (Tex.1998); *see also* Tex. Gov't Code § 311.021(2) (stating that in enacting a statute, it is presumed that the entire statute is intended to be effective). If the Legislature had intended for a parent to have access to all aspects of a child's mental health records by simply proving that he or she is indeed the child's parent, the Legislature would not have needed to add the phrase "who is acting on the patient's behalf" in section 611.0045(f).

■ We agree with the dissent in the court of appeals that, unfortunately, parents cannot always be deemed to be acting on the child's behalf. *See* 983 S.W.2d at 382 (Edelman, J., dissenting). An obvious example is when a parent has sexually molested a child and later demands access to the child's mental health treatment records. A court would not presume that the parent is acting on the child's behalf in such circumstances. Similarly, parents embroiled in a divorce or other suit affecting the parent/child relationship may have motives of their own for seeking the mental health records of the child and may not be acting "on the patient's [child's] behalf." Tex. Health & Safety Code § 611.0045(f). We therefore conclude that a mental health professional is not required to provide access to a child's confidential records

---

1. The relevant portions of section 611.0045 are as follows:

   § 611.0045. Right to Mental Health Record
   (a) Except as otherwise provided by this section, a patient is entitled to have access to the content of a confidential record made about the patient.
   (b) The professional may deny access to any portion of a record if the professional determines that release of that portion would be harmful to the patient's physical, mental, or emotional health.
   . . . .
   (f) The content of a confidential record shall be made available to a person listed by Section 611.004(a)(4) or (5) who is acting on the patient's behalf.

   Tex. Health & Safety Code §§ 611.0045(a), (b), (f).
   Section 611.004(a)(4) provides in turn:
   § 611.004. Authorized Disclosure of Confidential Information Other than in Judicial or Administrative Proceeding
   (a) A professional may disclose confidential information only:
   . . . .
   (4) to a person who has the written consent of the patient, or a parent if the patient is a minor, or a guardian if the patient has been adjudicated as incompetent to manage the patient's personal affairs.
   *Id.* § 611.004(a)(4).

if a parent who requests them is not acting "on behalf of" the child.

## IV

When a parent *is* acting on behalf of his or her child, the question that then arises is whether, under section 611.0045(b), a professional may nevertheless deny access to a portion of a child's records if their release would be harmful to the patient's physical, mental, or emotional health. TEX. HEALTH & SAFETY CODE § 611.0045(b). Jones contends that subsection (b) only applies when "the patient" seeks his or her own records and not when a parent seeks a child's records. We disagree.

Section 611.0045(f) contemplates that when a parent seeks a child's mental health records "on the patient's behalf," the parent steps into the shoes of the patient. *Id.* § 611.0045(f). Subsection (f) affords third parties, including a parent, no greater rights than those of the patient. This is evident when section 611.0045(f) is considered in its entirety. It applies not only to parents, but to "a person who has the written consent of the patient." *Id.* §§ 611.004(a)(4), 611.0045(f). It would be unreasonable to construe subsection (f) to allow a patient to obtain through a third person a record that a mental health professional has determined under subsection (b) would be harmful if released to the patient. Because subsection (b) may limit a patient's rights to his or her own records, subsection (b) can also limit a parent's or third party's right to a patient's records when the third party or parent stands in the patient's stead.

In construing a statute or code provision, a court may consider, among other matters, the (1) object sought to be attained by the statute, (2) circumstances under which the statute was enacted, (3) legislative history, (4) consequences of a particular construction, and (5) laws on similar subjects. *See* TEX. GOV'T CODE § 311.023. This Court has recently recognized that, through Chapter 611, "[t]he Legislature has chosen to closely guard a patient's communications with a mental-health professional." *Thapar v. Zezulka,* 994 S.W.2d 635, 638 (Tex.1999). One purpose of confidentiality is to ensure that individuals receive therapy when they need it. *See R.K. v. Ramirez,* 887 S.W.2d 836, 840 (Tex.1994) (describing the purposes of the physician-patient privilege under the Texas Rules of Evidence). Although a parent's responsibilities with respect to his or her child necessitate access to information about the child, if the absence of confidentiality prevents communications between a therapist and the patient because the patient fears that such communications may be revealed to their detriment, neither the purposes of confidentiality nor the needs of the parent are served.

If a professional does deny a parent access to part of a child's records, the parent has recourse under section 611.0045(e). TEX. HEALTH & SAFETY CODE § 611.0045(e). First, the professional denying access must allow examination and copying of the record by another professional selected by the parent acting on behalf of the patient to treat the patient for the same or a related condition. *Id.* Second, a parent denied access to a child's records has judicial recourse. *See id.* § 611.005(a). We therefore conclude that the court of appeals erred in construing sections 611.0045(b) and (f) of the Health and Safety Code as giving a parent totally unfettered access to a child's mental health records irrespective of the child's circumstances or the parent's motivation.

We turn to the facts of this case and the interplay between section 611.045 and section 611.005 of the Health and Safety Code, which provides a remedy to a parent if a child's mental health records have been improperly withheld.

## V

As already indicated above, a person who is aggrieved by a professional's improper "failure to disclose confidential communications or records" may petition a

district court for appropriate relief. TEX. HEALTH & SAFETY CODE § 611.005(a). A professional who denies access has "the burden of proving that the denial was proper." *Id.* § 611.005(b). Accordingly, Abrams bore the burden of proving in these proceedings that he properly denied access to his notes about his conversations with Karissa.

The trial court ruled against Abrams. Abrams did not request and the trial court did not make any findings of fact or conclusions of law. But because the reporter's record is part of the record on appeal, the legal sufficiency of the trial court's implied finding in support of the judgment, which was that Abrams failed to meet his burden of proof, may be challenged in the same manner as jury findings. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). We must examine the entire record to determine whether Abrams established as a matter of law that his denial of access was proper either because Abrams established that (1) Jones was not acting on Karissa's behalf, or (2) access to the notes would be harmful to Karissa's mental or emotional health.

Jones never indicated that he was seeking the notes on behalf of Karissa, as distinguished from his own behalf. At the hearing, Jones testified that his motivation for obtaining Abrams's notes was in part the indication that Karissa's mother had hired Abrams "to get a leg up on me in court." Although this is some evidence that Jones was not acting on behalf of Karissa but was acting in his own interest, it is not conclusive. Jones's testimony that he was "partially" motivated by what he perceived to be his former wife's custody tactics indicated that there were additional reasons for seeking Karissa's records. Abrams did not prove conclusively that Jones was not acting on behalf of Karissa.

But even if Jones were acting on behalf of Karissa, Abrams testified that in his professional opinion it would be harmful to her to release his notes detailing their conversations. When Abrams first saw Karissa, she would not talk to him. He was unable to establish a rapport with her until they discussed confidentiality. Abrams asked her "what it would take to get her to talk," and he explained at the hearing that "it came down to, she needed protection.... She needed protection against anyone knowing what she said. She simply couldn't talk if there was a chance either parent would know what she said." Abrams made the decision during the first session with Karissa not to give his notes to either of her parents. He testified, "I had to in order to be able to treat the girl." He told Karissa at that session that he would not disclose his notes to her parents unless required to do so by a court. Karissa thereafter opened up to Abrams. Abrams explained at the hearing that an integral part of psychotherapy is that the patient have a sense of protection and security and that she drop defensive mechanisms. Abrams continued to treat Karissa after he had denied her father access to the notes, and she responded positively to treatment after Abrams assured her that the details of her conversations would be confidential. Treatment continued until this suit was filed. None of this testimony was contradicted or even challenged. *See Allright, Inc. v. Strawder,* 679 S.W.2d 81, 82 (Tex.App.-Houston [14 Dist.] 1984, writ ref'd n.r.e.) (observing that "uncontroverted testimony, even from a witness categorized as an expert, may be taken as true as a matter of law if it is clear, direct and positive, and is free from contradictions, inconsistencies, inaccuracies and circumstances tending to cast suspicion thereon"). This testimony, in the absence of contrary evidence, is sufficient to establish as a matter of law that release of Karissa's records would have been harmful to her.

Jones's testimony that in his opinion, Karissa did not object to the release of Abrams's notes does not raise a fact question of whether their release would be harmful to her. Karissa was a layper-

son—an eleven-year-old layperson. She was not qualified to make a determination of whether release of her records would be harmful to her physical, mental, or emotional health. *See* TEX. HEALTH & SAFETY CODE § 611.0045(b). The uncontradicted evidence established as a matter of law that Abrams's denial of access to his detailed notes was proper.

\* \* \* \* \*

The trial court erred in holding that Jones was entitled to the detailed notes about his daughter's conversations with her mental health professional under the facts of this case. Accordingly, we reverse the judgment of the court of appeals and render judgment that Jones take nothing.

Justice HECHT filed a dissenting opinion.

Justice BAKER filed a dissenting opinion.

Justice BAKER, dissenting.

I believe that the court of appeals majority correctly construed the statutory scheme and properly applied the law to the facts to reach the result it reached.

Accordingly, I respectfully dissent from the Court's decision in this case.

Justice HECHT, dissenting.

In this Term's decisions construing the Parental Notification Act,[1] the Court has exhibited a disturbing lack of regard for the rights of parents to raise and care for their children.[2] This case continues in that vein, holding that under chapter 611 of the Texas Health and Safety Code, mental health care professionals—who, as de-

fined by statute,[3] include everyone from physicians to pretenders—have broad discretion to deny parents access to their children's mental health records, broader discretion than even a district judge has to order disclosure. As eager as the Court has been to find justification for allowing a child to have an abortion without telling her parents, contrary to a trial court's view of the evidence, it will come as no surprise that the Court has no difficulty keeping parents ignorant of their children's mental health records, contrary to the trial court's conclusion. As in the parental notification cases, the Court casts responsibility for its decision in this case on the Legislature. But this steady erosion of parental authority is judicial, not legislative; it results from the Court's view of statutory language through a prism of presumed diminution in parental authority. I respectfully dissent.

It should go without saying that parents generally need to know information contained in their children's health records in order to make decisions for their wellbeing. To remove any doubt that this is true, even after divorce, for any parent with custodial responsibility for a child, section 153.073(a)(2) of the Texas Family Code states that "[u]nless limited by court order, a parent appointed as a conservator of a child has at all times the right ... of access to medical, dental, psychological, and educational records of the child...." A parent's right to this information is not an insignificant matter and should not be restricted absent compelling reasons.

Section 611.0045 of the Texas Health and Safety Code, the pertinent parts of

---

1. TEX. FAM.CODE §§ 33.001–.011.

2. *In re Doe 1(I)*, 19 S.W.3d 249 (Tex.2000); *In re Doe 2*, 19 S.W.3d 278 (Tex.2000); *In re Doe 3*, 19 S.W.3d 300 (Tex.2000); *In re Doe 4(I)*, 19 S.W.3d 322 (Tex.2000); *In re Doe 4(II)*, 19 S.W.3d 337 (Tex.2000); *In re Doe 1(II)*, 19 S.W.3d 300 (Tex.2000).

3. TEX. HEALTH & SAFETY CODE § 611.001(2) (" 'Professional' means: (A) a person authorized to practice medicine in any state or nation; (B) a person licensed or certified by this state to diagnose, evaluate, or treat any mental or emotional condition or disorder; or (C) a person the patient reasonably believes is authorized, licensed, or certified as provided by this subsection.").

which are quoted in the margin,[4] permits a mental health care "professional", broadly defined as stated above, to deny a patient access to his own mental health records if disclosure would harm the patient's physical, mental, or emotional health. For the same reason, access may be denied to a patient's representative, including a parent if the patient is a child.[5] In a suit to obtain the records, the professional has the burden of proving that denial of access is proper.[6] Nothing in the statute suggests that this burden should be anything but substantial. Certainly, a patient should not be denied access to his own mental health records absent solid, credible evidence that disclosure will cause him real, demonstrable harm. A general concern that disclosure to the patient would not be in his best interest should not be enough to deny him access. The statute sets no different harm standard for denying a parent access to a child's records. Denial of access cannot be based on some general concern that the child may be displeased or discomfited, even severely, about the disclosure. Rather, denial must be grounded on evidence of actual impairment to the child's health.

As the parental notification cases recently demonstrate, the meaning the Court gives a statutory standard is best demonstrated not by the words used to describe it but by its application in specific circumstances. This case illustrates how little evidence the Court believes is necessary not simply to raise the issue of whether a parent should be denied a child's mental health records but to *conclusively establish*—so that no court can rule otherwise—that a parent is not entitled to the records. The Court's decision to deny access to the records in this case rests entirely on the testimony of Abrams, a licensed clinical psychologist, who stated at a hearing in the district court: that Jones's former wife brought their eleven-year-old daughter, Karissa, to him in February 1996 because

---

4. Section 611.0045. Right to Mental Health Record

    (a) Except as otherwise provided by this section, a patient is entitled to have access to the content of a confidential record made about the patient.

    (b) The professional may deny access to any portion of a record if the professional determines that release of that portion would be harmful to the patient's physical, mental, or emotional health.

    (c) If the professional denies access to any portion of a record, the professional shall give the patient a signed and dated written statement that having access to the record would be harmful to the patient's physical, mental, or emotional health and shall include a copy of the written statement in the patient's records. The statement must specify the portion of the record to which access is denied, the reason for denial, and the duration of the denial.

    (d) The professional who denies access to a portion of a record under this section shall redetermine the necessity for the denial at each time a request for the denied portion is made. If the professional again denies access, the professional shall notify the patient of the denial and document the denial as prescribed by Subsection (c).

    (e) If a professional denies access to a portion of a confidential record, the professional shall allow examination and copying of the record by another professional if the patient selects the professional to treat the patient for the same or a related condition as the professional denying access.

    (f) The content of a confidential record shall be made available to a person listed by Section 611.004(a)(4) or (5) who is acting on the patient's behalf.

    * * *

    (h) If a summary or narrative of a confidential record is requested by the patient or other person requesting release under this section, the professional shall prepare the summary or narrative.

5. The persons referred to in section 611.0045(f) who can act on behalf of a patient are "a person who has the written consent of the patient, or a parent if the patient is a minor, or a guardian if the patient has been adjudicated as incompetent to manage the patient's personal affairs", *id.* § 611.004(a)(4), or "the patient's personal representative if the patient is deceased", *id.* § 611.004(a)(5).

6. *Id.* § 611.005(b) ("In a suit contesting the denial of access under Section 611.0045, the burden of proving that the denial was proper is on the professional who denied the access.").

Karissa was agitated and showed signs of worry and sleeplessness; that Karissa refused to open up to him until he promised her that he would not reveal the details of their conversations to her parents, even though she understood that a judge might later order disclosure; that Karissa then told him she was troubled that if when she turned twelve in October she had to express a preference for living with one parent or the other, as her stepmother (her former nanny) had suggested she might,[7] it would provoke more hostility between her parents; that after meeting with Karissa six times in five months, she seemed much better; that Karissa had reiterated her desire for confidentiality in their last meeting four months earlier in June 1996, and in a note her mother had brought to him a few days before the October 15 hearing; and that he had told Karissa's father, Jones, that his former wife had hired him to "get a leg up on" Jones in their continuing court proceedings. On the specific issue of whether disclosing Karissa's records to Jones would harm Karissa's health, Abrams's testimony in its entirety is as follows:

> Q  Is it your opinion at this time that the release of those records would be physically or emotionally harmful to Karissa?
>
> A  Yes, sir.
>
> Q  And what is that opinion?
>
> A  That *would have harmed* her, as a matter of fact.  It would be the very essence, it would make her get better, to give her protection.
>
> Q  As we sit here on October 15th of 1996, *is it still your opinion* that it would be harmful to her mental or emotional health if these records are released?
>
> A  Yes, sir.
>
> Q  And can you tell the Judge *why* you believe that?
>
> A  *I've had no communications from her to be otherwise.*  I asked her the last time I saw her, in June about it, she reaffirmed her need for it.  I received a note from her last week asking for it again.

(Emphasis added.)

The Court holds that this testimony, which did not persuade the district judge, *conclusively established* that Karissa's health would be harmed by disclosing her records to her father.  The Court not only denies the trial court any meaningful role in determining credibility and weighing evidence, it reaches a conclusion, as a matter of law, on evidence that is inconclusive. Assuming that Abrams's testimony established that *Karissa's health would have been harmed in February 1996* if he could not have promised her a measure of confidentiality because she would not have opened up to him and he could not have counseled her, the only evidence that disclosure of the records *would harm Karissa's health in October 1996*, when Abrams was no longer seeing her, was that she continued to request confidentiality. Jones disputed whether Karissa still wanted Abrams's records kept from him, testifying that based on his conversations with his daughter, his opinion was that she wanted him to have the records.  The Court concludes that Jones's testimony is no evidence that disclosure would not harm Karissa because an eleven-year-old is not qualified to say what would be harm-

---

7.  *Cf.* Tex. Fam.Code § 153.134(a)(6) ("If a written agreement of the parents is not filed with the court, the court may render an order appointing the parents joint managing conservators only if the appointment is in the best interest of the child, considering the following factors:  ... (6) if the child is 12 years of age or older, the child's preference, if any, regarding the appointment of joint managing conservators ...."); *id.* § 153.008 ("If the child is 10 years of age or older, the child may, by writing filed with the court, choose the managing conservator, subject to the approval of the court."); *id.* § 153.009(b) ("When the issue of managing conservatorship is contested, on the application of a party, the court shall interview a child 10 years of age or older and may interview a child under 10 years of age.").

ful to her health. But if that is true, as I agree it is, then Abrams's testimony that Karissa continued to request confidentiality must likewise be disregarded. Karissa is no more qualified to say that disclosure of her records to her father would harm her health than that it would not. If Abrams's opinion cannot be based on Karissa's wishes, then it has no basis at all. Asked why he believed that disclosure would harm Karissa's health, Abrams answered, "I've had no communications from her to be otherwise."

Surely the Court does not think that a need for confidentiality at one point in time precludes disclosure of information forever. Nothing in the evidence before us suggests that Abrams would ever see Karissa again. Her twelfth birthday was three days after the hearing, and her anxieties about any choices she would have to make at that point were soon to be resolved one way or the other. No reason that Abrams gave for denying Jones access to his daughter's records remained valid. Had the trial judge found from this evidence that there might yet be some lingering need for nondisclosure, I could understand this Court's deference to that finding. But I do not understand how this Court can conclude that *no reasonable trial judge* could find from this evidence that Karissa's health would not be harmed by allowing her father access to her records.

It is no answer to say, as the Court seems to, that section 611.0045 allows a parent to take a child to other professionals until one is found who will release the records. True, Jones could simply have taken his daughter to one professional or another until he found one willing to turn over her records, and the statute gives Abrams no way to object. But the statute is not a full-employment guarantee for mental health care professionals, and no parent should be forced to shop a child as a patient merely to obtain the child's records. More importantly, I see no justification for applying section 611.0045 to permit one professional to trump another,

regardless of their relative qualifications, and yet let any professional trump a district judge.

The Court's determination to restrict parental access to mental health records despite and not because of the statute is further demonstrated by its conclusion that section 611.0045 authorizes nondisclosure not only when the child's health may be harmed but when a parent is not "acting on the patient's behalf" as provided in subsection (f) of the statute. These words cannot, in my view, be sensibly read to create a separate standard for access to records. One might think that a parent could easily meet such a standard by stating that his or her request for a child's records was motivated out of love and concern for the child, but the Court concludes that evidence that parents are hostile to one another is enough by itself to support an inference that they are selfishly motivated and therefore not acting on their child's behalf. The evidence the Court points to in this case is especially problematic. Abrams told Jones—Jones did not merely have his suspicions—that he believed he had been hired by Karissa's mother to counsel Karissa in order to give the mother "a leg up" in her ongoing disputes with Jones over custody of Karissa and her sister. The Court is troubled by Jones's frank admission in the October hearing that Abrams's statement to him was part of his motivation for obtaining Karissa's records, even though it could not have been important to Jones when he first went to meet with Abrams the preceding February—which was before Abrams had expressed the view that he himself was being used by Karissa's mother. It is difficult to imagine any reasonable, candid parent who would not acknowledge a similar motivation under the circumstances; indeed, one might have been less inclined to believe Jones if he had denied any such motivation. To rest denial of access to a child's medical records merely on inferences drawn from disputes between the parents conflicts with

their rights under section 153.073(a)(2) of the Texas Family Code.

By construing section 611.0045 as establishing an acting-on-behalf-of standard for gaining access to a child's mental health records, the Court requires inquiry into, and inevitable disputes over, a parent's subjective motivations, instead of focusing on the more objective harm-to-the-patient's-health standard. I do not read section 611.0045 to require such an inquiry, which will almost always exacerbate difficulties between divorced parents.

While Abrams appears to have been professional in his dealings with the parties, and the district court did not suggest the contrary, the court was not bound by Abrams's views. Today's decision, coming as it does four years after the events at issue, cannot be of much importance to these parties. Karissa will soon be sixteen. Its importance lies in the difficulties it will cause future parties and in its further deterioration of parents' rights to raise their children.

