**In re Jane DOE 4.**

No. 00–0213.

Supreme Court of Texas.

March 22, 2000.

## OPINION

Chief Justice PHILLIPS delivered the opinion of the Court, in which Justice ENOCH, Justice BAKER, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES joined.

This is a confidential appeal from a sealed order denying a minor's application for a court order authorizing her to consent to an abortion without notifying either parent. *See* TEX. FAM.CODE § 33.003. The court of appeals affirmed the trial court's judgment denying the application. We vacate the judgments of the court of appeals and the trial court and remand to the trial court for further proceedings.

### I

Jane Doe is a pregnant, unemancipated minor. Doe applied to the trial court for an order allowing her to consent to an abortion without notifying her parents. *See id.* Doe alleged in her application that: (1) she was mature and sufficiently well informed to make the decision to have an abortion performed without notifying her parents; (2) parental notification would not be in her best interests; and (3) notification may lead to her being physically or emotionally abused. *See id.* § 33.003(i). The trial court appointed her an attorney and also designated the attorney to serve as her guardian ad litem. *See id.* § 33.003(e).

The trial court held a hearing on Doe's application. *See id.* § 33.003(g). Doe was the only witness at this hearing. Her testimony largely consisted of monosylla-

bic responses to leading questions. The trial court denied Doe's application and found: (1) the minor is not mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents; (2) notifying the minor's parents would not be in her best interest; and (3) notifying either of the minor's parents would not lead to her being physically, sexually, or emotionally abused. Doe's attorney filed a motion for reconsideration, which the trial court also denied.

At some point, the trial court issued what it termed a "Nunc Pro Tunc Judgment," which amended the second finding to say that notifying either of her parents *would* be in Doe's best interests. The record is unclear about when the trial court issued this judgment.

■ Because of our disposition, we express no opinion on the propriety of this "Nunc Pro Tunc Judgment." But we do note, as we stated in *In re Jane Doe 2:*

> [A trial court's conclusion that] it would be in Doe's best interest to notify her parents .... is not the proper inquiry under the statute, which directs the court to consider whether "notification *would not* be in the best interest of the minor...."

19 S.W.3d 278, 282 (Tex.2000) (emphasis in original) (quoting Tex. Fam.Code § 33.003(i)).

Doe sought review from the court of appeals, which affirmed the trial court without opinion. In her appeal to this Court, Doe argues that she is mature and sufficiently well informed to decide to have an abortion without notifying either of her parents and that she established in the trial court that notifying either of her parents of her intent to have an abortion would not be in her best interests. We consider each in turn.

## II

■ Doe's evidence that she is mature and sufficiently well informed is very limit-ed, consisting almost entirely of monosyllablic answers to conclusory questions posed by her counsel. When asked if she realized that what she planned to do was, as her counsel put it, to end a life, she responded affirmatively. She also answered "yes" when asked whether she realized that there "are certain inherent dangers in performing any type of surgical procedure, including abortion." When asked if she has had sufficient time to think about what she plans to do, she said she thought so. This was the only evidence to show that she had considered the ramifications of her decision to have an abortion. This effort to demonstrate that she is mature and sufficiently well informed falls short of the requirements we announced in *In re Jane Doe 1. In re Doe,* 19 S.W.3d 249, 255 (Tex.2000)(*Doe 1* ).

In *Doe 1,* we set out three showings that a minor must make to establish that she is sufficiently well informed. First, "she must show that she has obtained information from a health-care provider about the health risks associated with an abortion and that she understands those risks. That would include an understanding of the risks associated with the particular stage of the minor's pregnancy." *Id.* Second, "she must show that she understands the alternatives to abortion and their implications." *Id.* Third, "she must show that she is also aware of the emotional and psychological aspects of undergoing an abortion...." *Id.* We did not attempt to set forth a bright-line test for maturity, although we did list certain facts that a trial court can and cannot consider in determining maturity. *See id.* The minor in this case did not have the benefit of our opinion in *Doe 1* because it was issued on the same day as the hearing on her application. We therefore remand to the trial court to afford Doe an opportunity to present evidence that she is "mature and sufficiently well informed" in light of *Doe 1.*

## III

■ Doe also asserts that the trial court erred in failing to find that notification would not be in her best interests. We review the trial court's determination about whether notification would not be in the minor's best interests under the abuse of discretion standard. *See Doe 2,* 19 S.W.3d at 281. Doe claims that the trial court abused its discretion because her testimony established that notifying her parents that she was pregnant and wanted an abortion would lead her parents to expel her from their home and sever all ties with her.

■ In *In re Jane Doe 2,* we established a non-exhaustive list of four factors for courts to consider in determining a minor's best interests in a parental notification proceeding: (1) the minor's emotional or physical needs; (2) the possibility of emotional or physical danger to the minor; (3) the stability of the minor's home and whether notification would cause serious and lasting harm to the family structure; and (4) the relationship between the parent and the minor and the effect of notification on that relationship. *Id.* at 282. As a matter of law, the minor's emotional well-being, the family structure, and the parent-child relationship would be adversely affected if her parents withdrew support and severed all contact with her. If the minor's uncontroverted testimony to this effect were clear, positive, and direct, and not impeached or discredited by other circumstances, the trial court would have to accept it as fact. And, in light of such facts, the trial court would abuse its discretion if it then denied the minor's application.

■ But because trial courts can view a witness's demeanor, they are given great latitude in believing or disbelieving a witness's testimony, particularly when the witness is interested in the outcome. Act-

ing as factfinder, a trial judge can, therefore, reject the uncontroverted testimony of an interested witness unless it is readily controvertible, it is clear, positive, direct, and there are no circumstances tending to discredit or impeach it. *See Lofton v. Texas Brine Corp.,* 777 S.W.2d 384, 386 (Tex.1989); *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986); *Anchor Cas. Co. v. Bowers,* 393 S.W.2d 168, 169 (Tex. 1965); Powers & Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L.Rev. 515, 524 (1991).[1] The readily-controvertible prong of this test is not applicable to a parental notification proceeding under Chapter 33. Because the hearing is unopposed, the minor's testimony will rarely, if ever, be readily controvertible. The other parts of this test, however, apply to a notification proceeding as they would in any other proceeding in which the trial court acts as a factfinder.

Our cases also establish, however, that if an interested witness's uncontroverted testimony meets this test, the trial court is not free to disregard it merely because the court does not believe the witness to be credible. For example, in *Griffin Industries, Inc. v. Thirteenth Court of Appeals,* 934 S.W.2d 349 (Tex.1996), we held that a trial court has no discretion to sustain a contest to an affidavit of inability to pay costs on appeal when the movant offered uncontroverted testimony that her entire income came from federal disability and supplemental security benefits. *Id.* at 352. Against the dissenting Justices' contention that the trial judge could reject the movant's testimony because she may have previously obtained government benefits by fraud, we said:

> Apparently the dissent is of the view that even after a witness testifies that he or she is dependent on public assistance and thereby establishes a prima facie

1. If the trial court denies the minor's application based on circumstances tending to discredit the minor's testimony that are not apparent from the record, the trial court should make written findings detailing these circumstances. *See generally Doe 2,* 19 S.W.3d at 289; *Doe 1,* 19 S.W.3d at 251.

case of indigence, the trial court simply may refuse to believe that the witness is credible and may conclude that the witness is not in fact indigent. The dissent misapprehends the effect of establishing a prima facie case. To overcome a prima facie showing, an opposing party must offer *evidence* to rebut what has been established. The trial court is not free to disbelieve the direct, positive evidence that establishes the prima facie case.

*Id.* (emphasis in original). Likewise, in *Ex parte Dustman,* 538 S.W.2d 409 (Tex. 1976), after the trial court issued a contempt order confining the relator for failing to pay child support, we ordered the relator discharged when his uncontroverted testimony demonstrated that he was unable to pay the amount in arrears. *Id.* at 410. Because the relator's testimony was " 'clear and positive, and there are no circumstances in evidence tending to discredit or impeach [it],' " we found that the relator had established his inability to pay as a matter of law. *Id.* (quoting *McGuire v. City of Dallas,* 141 Tex. 170, 170 S.W.2d 722, 728 (1943)). Accordingly, we held that the trial court exceeded its authority by ordering him confined. *Id.*

Here, the minor's testimony appears to be direct and positive, and does not appear to be self-contradictory or otherwise suspect. But it does not clearly establish that the minor's parents would abandon her and cut off all contact if they were notified. The minor's explanation of why she believes her parents will expel her and sever contact is not very detailed. It can be summarized as follows: some years ago,[2] at age seventeen or eighteen, Doe's sister found herself in a similar situation. After the sister told their parents, the parents "kicked her out of the house." Neither the

parents nor Doe have spoken to the sister since the incident. Doe believes that her parents would treat her similarly if notified that she is pregnant and seeking an abortion.

The minor's brief testimony leaves many questions unanswered. We know that Doe's sister experienced these circumstances, but we do not know whether other problems may have contributed to Doe's parents' decision to expel her sister from the home. We know nothing about Doe's relationship with her parents, which may be quite different from her sister's. In fact, it is not clear from Doe's testimony whether her parents, her sister, or both, are responsible for their long estrangement.[3] Because the minor's testimony does not elaborate at all on the circumstances surrounding the rift between her sister and her parents, there is not clear evidence that the minor would suffer the same fate as her sister should she tell her parents.

Because it is not clear from the minor's testimony that her parents would react to notification by expelling her from their home and severing all ties, the trial court did not abuse its discretion by failing to find that notification would not be in the minor's best interests.

## IV

■ Because Doe did not establish as a matter of law that she was mature and sufficiently well informed or that notification would not be in her best interests, we cannot render a judgment granting her application. But because the hearing in this case was held on the day we issued our opinion in *Doe 1* and before we issued our opinion in *Doe 2,* we vacate the lower courts' judgments and remand to the trial

---

**2.** Although the exact number of years is in the record, we do not reveal it in order to ensure the minor's anonymity. See TEX. FAM.CODE § 33.003(k).

**3.** The minor's lawyer stated in a motion for reconsideration that the minor's parents for-

bade the minor from speaking to her sister. This unsworn testimony was not evidence, however. *See, e.g., Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997); *United States Gov't v. Marks,* 949 S.W.2d 320, 326 (Tex. 1997).

court for another hearing in light of those opinions. *See* TEX.R.APP. P. 60.2(f)(providing that this Court may "vacate the lower court's judgment and remand the case for further proceedings in light of changes in the law"); *Doe 2*, 19 S.W.3d at 283; *In re Doe 3*, 19 S.W.3d 300, 301 (Tex.2000)(Gonzales, J., concurring in the judgment). As neither the minor nor her lawyer were aware of our explanations of the "mature and sufficiently well informed" and "best interests" requirements in *Doe 1* and *Doe 2*, the minor should be allowed another hearing to present her case in light of these decisions. Similarly, the trial court should be allowed the opportunity to decide this case based on the standards articulated in *Doe 1* and *Doe 2*. Neither the minor nor the trial court should be deprived of our clarification of the law in these cases merely because the hearing occurred before the trial court, the minor, or her lawyer were aware of this Court's holdings.

\* \* \*

For the reasons stated above, we vacate the lower courts' judgments and remand to the trial court for another hearing in light of *Doe 1* and *Doe 2*. In so doing, we direct that upon remand, the proceedings in the trial court must be concluded as if Doe's application had been filed the next business day after our opinion issues. *See* TEX. FAM.CODE § 33.003(h). In the event that the minor requires additional time after issuance of this opinion to prepare for a hearing, she may, of course, request an extension of time. *See id.*

Justice HECHT filed a dissenting opinion.

Justice OWEN filed a dissenting opinion, in which Justice HECHT and Justice ABBOTT joined.

Justice HECHT, dissenting.

This is the Court's fifth Parental Notification Act [1] decision in less than a month. In each case, the trial court denied the minor's application for authority to obtain an abortion without telling her parents, the court of appeals affirmed, and this Court set aside the lower courts' rulings. In this case and three others,[2] the Court has remanded for the trial court to try again. In one case,[3] after a remand, the Court reversed the lower courts and granted the minor's application outright. The Court in that case even refused to explain its ruling, breaking its long-established practice of accompanying its judgment with an opinion.[4]

How is it that no court we know of has ever correctly denied a minor's application? Is it that trial and appellate judges across Texas have suddenly become so incompetent that they cannot read and apply a statute properly? Hardly. Take, for example, the trial court in *In re Doe 3*. It found that the minor would not be emotionally abused if she told her parents that she was pregnant and wanted an abortion. The court of appeals affirmed. This Court, doubting the trial court's finding, remanded the case for further hearing.[5] Four JUSTICES—JUSTICE ENOCH, JUSTICE BAKER, JUSTICE HANKINSON, and JUSTICE O'NEILL—would have held that the minor had proved conclusively that she would suffer abuse and that no reasonable judge could have thought otherwise.[6] On remand, the minor decided to tell her moth-

---

**1.** TEX. FAM.CODE § 33.001–.011.

**2.** *In re Doe 1(I)*, 19 S.W.3d 249 (Tex.2000); *In re Doe 2*, 19 S.W.3d 278 (Tex.2000); *In re Doe 3*, 19 S.W.3d 300 (Tex.2000).

**3.** *In re Doe 1(II)*, 19 S.W.3d 300 (Tex.2000) (Hecht, J., dissenting).

**4.** *Id.*

**5.** *In re Doe 3*, 19 S.W.3d 300 (Tex.2000).

**6.** *Id.* at 306 (Enoch, J., concurring and dissenting).

er, and the trial court proved right after all: no abuse resulted. As the minor's lawyer told the trial court, "it turns out that you were completely right." And hence, this Court was completely wrong.

Unfazed, the Court continues on its course of setting aside every denial of a minor's application for an abortion without parental notification. It is not that the lower courts are persistently wrong. The basis for the Court's five parental notification decisions is the majority's deep-seated ideology that minors should have the right to an abortion without notice to their parents, free of any significant restriction. The existence and force of that ideology are evident in two elements present in every one of the Court's five decisions. First, the Court has steadfastly refused to give trial courts' fact-findings the deference they would command in any other context. The reason for this lack of deference is that the Court intends to act as the trial court in these cases, even though it cannot see or hear the witnesses or assess their credibility. The Court refers to this unique procedure as "meaningful appellate review",[7] but what is most meaningful about it—indeed, what is unprecedented— is that five or six Justices in an Austin courthouse are ensuring that minors throughout the State, sight unseen, can obtain abortions without telling their parents. Second, the Court has simply refused to acknowledge that the Legislature's purpose in adopting the Parental Notification Act was to make it harder, not easier, for minors to obtain abortions without parental notification. Surely no friend or foe of the legislation who struggled through the two legislative sessions that it took to pass the statute had any idea that it would actually facilitate teenage abortion, yet that is how the Court has construed it: no application is to be denied. The Legislature's plain purposes in adopting the Act were to protect parents' rights to raise their children and to discourage teenage pregnancy and abortion. Justices of this Court may disagree with legislative policy—and with respect to parental notification they very definitely do—but they may not substitute their views for the Legislature's. As I have already observed: "To substitute judicial intent for legislative intent, and Supreme Court findings for trial court findings, is judicial activism."[8] That activism continues.

Today's decision provides further evidence of the Court's ideological motivations. The Court states that a minor must be allowed to have an abortion without telling her parents if she "clearly" shows that if they knew, they would withdraw their support and sever contact with her if they legally could. (There is no issue of illegal abandonment in this case.) It is in a minor's best interest, a majority of the Court believes, to conceal her pregnancy from her parents and to obtain an abortion without telling them if she feels that they would strongly disapprove of her and her conduct. In other words, ignorance is bliss, or at least parental ignorance is filial bliss; what the folks don't know won't hurt them—and more importantly, won't hurt their kids. This is a tragically distorted view of parental authority, individual responsibility, and family relationships. No parent likes hearing of a child's misconduct. In the very short term, any child is better off not having to face parental disapproval in the shallow sense that she can put off that painful consequence of her behavior. But in the long term, a child is not better off hiding critical aspects of her life from parents interested in her wellbeing simply because she thinks they will not approve. Parents should help their children all they can, but it is not in a child's best interest to fool her parents into thinking something untrue, and that is precisely what the Court condones by today's decision. A parent's role is not confined to furnishing room and board, looking over report cards, and handing out

---

7. *Ante,* at 325–26.

8. *Id.* at 309 (Hecht, J., dissenting).

allowances. Parents need to know who their children's friends are, what their dreams and frustrations are, whether they are exposed to drugs or other perils, and what guidance they need to achieve adulthood. Concerned parents have the right and the responsibility to disapprove of what they believe to be a child's misbehavior, if necessary, in forceful terms. Deceit cannot be the price of approval. The Court rejects these principles and their reflection in the Parental Notification Act.

The Court continues to refuse to construe and apply the Act as the Legislature intended, and therefore I remain in dissent.

## I

Jane Doe, 17, applied to the trial court for authorization to have an abortion without telling her parents, as permitted by section 33.003 of the Texas Family Code. She filed a standard form application[9] with check marks beside the following three assertions:

I am mature enough to decide to have an abortion without telling my parent(s).... I also know enough about abortion to make this decision.

Telling my parent(s) ... that I want an abortion is not in my best interest.

Telling my parent(s) ... that I want an abortion may lead to physical or emotional abuse of me.

Each of these assertions, if proved by a preponderance of the evidence, is a statutory basis for granting the application.[10]

The trial court appointed an attorney to represent Doe and also act as her guardian ad litem, as permitted by statute.[11] At the hearing, Doe was the only witness, and her testimony was very brief—just six pages in the reporter's record—most of it consisting of simple "yes" answers to her attorney's questions.

Doe testified that she is a high school senior making straight A's and planning to go to college. She is almost twelve weeks' pregnant. The father, 16, a junior in high school, was to accompany Doe to court but did not do so. Concerning her thought process in deciding to have an abortion, the entirety of Doe's testimony is as follows:

Q Now, we also talked about the ramifications of what you're doing, have we not?

A Yes.

Q And we have talked about that life is very sacred, have we not?

A Yes, we have.

Q And you know that if the Court grants this, in essence what you are going to do is end a—a life that is already starting now?

A I realize that.

Q And you also realize that there are certain inherent dangers in performing any type of surgical procedures, including abortion? You understand that?

A Uh-huh. Yes, sir.

Q All right. Do you think you have had sufficient time to think about this?

A I think so.

Concerning her best interest and the possibility that her parents would emotionally abuse her if she told them that she is pregnant and wants an abortion, Doe testified:

Q I believe you told me about your sister being kind of in the same predicament; is that right?

A That's right.

Q And ever since she told your parents, they have never talked to her?

A ..., yes.

Q And you are afraid that if you would tell your parents that the same thing would happen to you?

A Uh-huh. Completely.

9. PARENTAL NOTIFICATION RULES, FORM 2A.

10. TEX. FAM.CODE § 33.003(i).

11. *Id.* § 33.003(e).

Q   And that would be some type of emotional abuse towards you, wouldn't it?

A   Yes, it is.

Q   They don't physically abuse you or anything like that?

A   No.

* * *

Q   Now, do you believe that if the Court grants this, this is in your best interest?

A   Yes.

Q   And I think you told me that you might sometime in the future tell your parents about this, but right now is not the time to do it?

A   No.

Q   All right.

A   No.

Following this examination by Doe's attorney, the trial court asked two additional questions:

Q   Okay. Tell me about your sister's situation.

A   When she was 18—17 or 18.  It was about [___] years ago—she fell into a similar problem.  She told my parents. My parents are very strict.  They go— they have their beliefs and their ideas of what should happen, and they went with them.  And they basically kicked her out of the house.  Told her that she is on her own.  They haven't spoken since.  It is—we never mention her.  It's—and if we do, it is—it happens that—it is like it happens all over again, going through the thing and all of that.

Q   And where is she now?

A   I have no idea.  I haven't had any contact with her in [___] years.

Doe never explained the circumstances of her sister's "predicament" or "problem". Doe was unsure of her sister's age and did not say whether she was still in high school at the time.  She did not state whether her sister had had prior problems with her parents that contributed to the difficulty in their relationship.  She did not explain why she herself had had no contact with her sister in several years.

At the conclusion of the hearing the court stated that it would think about the case and rule before 5:00 p.m. of the next business day, the deadline prescribed by statute.[12]  Although the statute requires a trial court to rule on an application "immediately after the hearing is concluded",[13] Doe did not object to the delay and has not complained of it on appeal.  The trial court issued written findings of fact, including the following:

> The applicant IS NOT mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents. . . .

> Notifying either of the applicant's parents ... WOULD NOT be in her best interest.

> Notifying either of the applicant's parents ... WOULD NOT lead to physical, sexual, or emotional abuse of the applicant.

Three days later the trial court issued findings nunc pro tunc.  The only change was to omit the "NOT" in the second finding quoted above.  Doe has not complained on appeal of this procedure, nor does it appear to have harmed her.

The court of appeals affirmed the trial court's ruling without opinion.

## II

The factual basis for Doe's "best interest" and "emotional abuse" assertions is the same.  Thus, the three grounds on which Doe bases her application conflate to two: whether she is mature and sufficiently well informed to have an abortion without telling her parents, and whether it is not in her best interest to tell her parents

12.   Tex. Fam.Code § 33.003(h).

13.   *Id.* § 33.003(g).

because they may sever their relationship with Doe, thereby causing her emotional abuse.

## A

The Court concludes that Doe did not establish the first ground for her application—"mature and sufficiently well informed"—and she clearly did not. Her simple affirmative answers to five questions posed by her lawyer do not begin to show whether she is mature or whether she had sufficient information about abortion and its alternatives to make a decision. Doe does not argue here that she offered evidence on these issues; she only complains that the trial court did not make specific findings on whether she is mature and sufficiently well informed to have an abortion without notice to her parents. Absent any evidence, there was nothing the trial court could find, other than that she failed to carry her burden of proof.

The Court's remand for reconsideration in light on *In re Doe 1(I)* [14] is completely unjustified. By no stretch of the imagination could any reasonable person have thought that "mature and sufficiently well informed" could be proved by the brief evidence Doe gave. It is one thing for the Court to remand a case for further consideration in light of developments in the law that may not have been anticipated, but it is another thing altogether to remand when a party has made no attempt to adduce even minimal proof. Tellingly, Doe does not complain in this Court that she was surprised by the decision in *Doe 1(I)*, and that if she had known of it, she would have presented other evidence. Absent such complaint, or any hint that it could be made, the Court's remand has no basis

other than the majority's determination that no application will be denied.

## B

Doe offered very little more evidence on the other ground of her application—her best interest and any likelihood of emotional abuse. She said only that years earlier her sister had been in "kind of ... the same predicament" and that her parents, being "very strict", "went with" "their ideas of what should happen," "basically kicked her out of the house", "told her that she [was] on her own", and "haven't spoken since." Doe did not give any details of her sister's "predicament". She was unsure of her sister's age when the situation occurred, and she did not indicate whether her sister's circumstances were such that her parents were legally obligated to support her. [15] Doe did not explain whether other circumstances in her sister's life had contributed to a deterioration in her relationship with their parents, or whether subsequent events had solidified the estrangement. At the time that situation occurred, which was before the Parental Notification Act was passed, Doe's sister could have obtained an abortion without telling her parents, even if she was a minor.

We have held that when the best interest of a child must be determined, " '[w]ith the opportunity to observe the appearance and demeanor of the witnesses, to weigh their testimony, and evaluate the virtues of parties, no one is in a position to do this better than the trial court.' " [16] The trial court's unique opportunity to assess a witness's credibility and demeanor is nowhere more important than in these parental no-

---

**14.** 19 S.W.3d 249 (Tex.2000).

**15.** *See* Tex. Fam.Code § 151.003(b) ("The duty of a parent to support his or her child exists while the child is an unemancipated minor and continues as long as the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma until the end of the school year in which the child graduates."). *See also id.* § 154.001(a) ("The court may order either or both parents to support a child in the manner specified by the order ... until the child is 18 years of age or until graduation from high school, whichever occurs later....").

**16.** *Taylor v. Meek,* 154 Tex. 305, 276 S.W.2d 787, 790 (1955).

tification cases where no one is present to cross-examine or contradict the minor. There is no way for this Court to make the same assessment based on a reporter's transcript of the testimony. If the witness's testimony is not extensive and detailed enough to indicate credibility, the trial court's assessment cannot be second-guessed on appeal.

An interested witness's testimony is not conclusive, even when no one is present to dispute it. In *Holt Atherton Indus., Inc. v. Heine,* the trial court rendered a default judgment against the defendant after it failed to appear and answer.[17] The judgment included an award for lost profits, based upon the plaintiff's affirmative answer to a single question concerning the existence and amount of those damages.[18] This Court reversed, holding that the plaintiff's simple assertion of damages was not sufficient evidence to support recovery.

> The Court correctly states that
>
> because trial courts can view a witness's demeanor, they are given great latitude in believing or disbelieving a witness's testimony, particularly when the witness is interested in the outcome. Acting as factfinder, a trial judge can, therefore, reject the uncontroverted testimony of an interested witness unless it is readily controvertible, it is clear, positive, direct, and there are no circumstances tending to discredit or impeach it.[19]

To illustrate this rule, the Court cites *Griffin Indus., Inc. v. Thirteenth Court of Appeals,* which held that an appellant's evidence of her financial circumstances es-

tablished her right to appeal as an indigent, and that the trial court was not free to disbelieve her.[20] The appellant had testified in detail about her education; her work history; her efforts to gain employment; her physical problems; the sources and amount of her income; her expenses for rent, utilities, and groceries; her assets, including her car and clothes; her debts, including taxes, attorney fees, and court costs; and her family situation.[21] We held that the trial court could not disbelieve appellant's evidence of her financial condition merely because she *may* have misrepresented her marital status in the past to obtain welfare benefits.[22]

Applying the rule in this case, the Court correctly concludes that Doe's testimony is no evidence that telling her parents of her pregnancy would result in her being abused, and no evidence that it would be in her best interest to avoid disclosing her circumstances to her parents. Doe's testimony is not merely lacking in clarity, as the Court says, but is neither positive nor direct. One need only compare the testimony I have quoted above, which is virtually the entire record, with the evidence cited in *Griffin* to see how inadequate Doe's testimony was to prove her best interest and any possibility of emotional abuse. Wholly vague and lacking in details, Doe's testimony no more than hints at any real problem that would result from her telling her parents of her pregnancy. As with the other ground for Doe's application, no remand is warranted on such a slim showing.[23]

---

17. 835 S.W.2d 80, 84 (Tex.1992).

18. *Id.*

19. *Ante,* at 325.

20. 934 S.W.2d 349 (Tex.1996).

21. *Id.* at 350–351.

22. *Id.*

23. Ironically, JUSTICE BAKER, joined by JUSTICE ENOCH, dissented in *Griffin,* stating:

> In a nonjury trial or hearing, the trial court is the sole judge of the witness' credibility and the testimony's weight. The trial court, as the fact-finder, has the right to accept or reject all or any part of any witness' testimony. The trial court may believe one witness and disbelieve others. The trial court may resolve inconsistencies in any witness' testimony.
>
> The reviewing court is not a fact-finder and cannot pass upon a witness' credibility or substitute its judgment for that of the fact-finder even if there is conflicting evidence that would support a different con-

But the fundamental deficit in Doe's proof is not merely lack of clarity. Even if she had been more detailed, she could not use her parents' likely disapproval, however severe, to justify deceiving them. I vehemently disagree with the Court's statement that if Doe had clearly shown that her parents would withdraw their support if they were told of her pregnancy, and if they could do so legally, then the trial court would have had no choice but to grant her application. In a very simplistic sense, it is in Doe's best interest not to tell her parents that she is unexpectedly pregnant, just as it would be in her best interest not to tell them that she had suddenly dropped out of school and decided not to graduate, or that she was using drugs, or that she had stolen from a convenience store, or that she had hit someone with her car. Concerned parents do not relish hearing such news about their children, and they are certainly happier before they know the facts, just as the child was happier before the events occurred. But it is not in a child's best interest to fool a parent into being happy when knowing the truth would cause the parent to disapprove of the child's behavior. In the short term, the child may avoid the unpleasantness of parental displeasure, but in the long term the child risks lasting injury to the relationship and injury to her own character. She also cuts herself off from the support that may come unexpectedly, as it did for the minor in *Doe 3*. A concerned parent has not only the right but the duty to know.

The Court's contrary view—which is certainly not supported by the Parental Notification Act but is simply imposed by the Court—is destructive of family relationships, individual responsibility, and parental authority. Taking Doe at her word that her parents' reaction to disclosure of her unexpected pregnancy will be severely critical, I do not see how their continued approval of Doe, obtained by Doe's deceit, would be preferable. No doubt Doe would continue to enjoy her parents' support, but she would know that she had taken advantage of their ignorance, obtaining their uncritical affection under false pretenses. To say that this is in Doe's best interest trivializes the concept. A child's best interest must be gauged not merely by the lack of unpleasant disruptions in life but by the construction and destruction of character and relationships. Her application granted, Doe would contend in the longer term with the knowledge that not only had she disappointed her parents, but she intentionally misled them when they had a right to know the truth. It cannot be good for a family relationship—or any relationship—for one member to know that it is built on a falsehood. Nor does it promote individual responsibility for a person to escape the consequences of her actions simply by concealing them from others. Perhaps Doe's parents would be more supportive than Doe expects, as Doe 3's mother was, but even if it turned out that they were not, the decision to deny them their right to know of a "grave and indelible" [24] event in their daughter's life should not be made without the most compelling evidence.

Doe's parents cannot legally abandon her as long as they are obliged by law to support her. After that, they are free to do as they choose. It is certainly to be hoped that they would not choose to end all relationship with their daughter because of her pregnancy, and that Doe and her parents would work to rebuild their

---

clusion. The trial court as the fact-finder is exclusively in a position to observe the witnesses and to evaluate their testimony and credibility.

*Griffin,* 934 S.W.2d at 355 (Baker, J., dissenting) (citations omitted). Apparently JUSTICE BAKER and JUSTICE ENOCH have abandoned these views, because if they continued to hold

them, they could not join the majority in this case in completely disregarding the trial court's findings, which were obviously based in part on its assessment of Doe.

**24.** *Bellotti v. Baird,* 443 U.S. 622, 642, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II* ).

relationship. But Doe's parents should decide for themselves. Deceiving them cannot, in the end, be in Doe's best interest.

* * * * *

For six weeks the Court has worked on little else than parental notification cases. That is not the Legislature's fault; it is the Court's fault. The Legislature clearly intended to set high standards for obtaining an abortion without parental notification, and to afford trial courts discretion in their decisions. Had the Court construed the statute in accordance with the Legislature's intent, it would have denied the appeals in these cases and upheld the trial courts. Ignoring legislative will, a majority of this Court has commandeered the process to steer it directly and without fail to a judicially predetermined destination. The penalty is an unending flow of appeals from which it cannot extricate itself so long as the lower courts refuse to surrender their judgment to this Court's prodding.

I would affirm the lower courts. From the Court's refusal to do so, I dissent.

Justice OWEN, joined by Justice HECHT and Justice ABBOTT, dissenting.

This Court has once again been asked to review the denial of a minor's application to have an abortion without notifying either of her parents. The Court does not and cannot find error in the trial court's judgment or in the court of appeals' judgment affirming it, but the Court nevertheless remands this case for another hearing. The Court does so even though it concludes that Jane Doe 4 "falls short" of demonstrating that she is mature and sufficiently well informed to make the decision to have an abortion and that her testimony regarding her best interest is "brief [and] leaves many questions unanswered." 19 S.W.3d at 326. The interests of justice do not require a remand in this case, and I dissent.

More fundamentally, I disagree that this Court has the authority, statutory or otherwise, to decide that parents will not be permitted to exercise their right to withdraw support from their children when those children become adults in the eyes of the law. If parents strongly disapprove of the conduct of their children when they were minors, parents are entitled to determine that there will be consequences when the children attain majority. While it is my fervent hope that no matter what the transgressions of the child have been, no parent would sever all contact with an adult child, it is not the business of courts to interject their own values into the lives of the citizens of this State.

## I

Jane Doe 4 is seventeen years old and lives at home with her parents. She is a senior in high school with good grades, and expects to graduate this spring and attend college in the fall. She testified that several years ago, her older sister became pregnant when she was seventeen or eighteen and that her parents "basically kicked her [sister] out of the house" and "[t]old her that she is on her own." Jane Doe 4 also testified that neither she nor her parents have spoken to her sister since, and she does not know where her sister now lives. Based on this testimony, Jane Doe 4 argues that she has established as a matter of law that it is in her best interest to have an abortion without notifying one of her parents.

I agree with the Court that Jane Doe's testimony was brief and vague, and that she did not conclusively establish that notification of one of her parents of her intent to have an abortion would not be in her best interest. 19 S.W.3d at 325. The Court says, however, that if Jane Doe 4 were able to establish conclusively that her parents would withdraw their support and sever all contact, she would establish her right to an abortion without notification as a matter of law. 19 S.W.3d at 325.

The Court seems to say, although it is not clear, that it would not matter if Jane Doe 4's parents withdrew their support *after* she attained majority and her parents no longer had any legal obligation to support her. To the extent that the Court's opinion may be so read, it is in error.

Section 33.003(i) of the Family Code provides that if a trial court determines that it would not be in the best interest of a minor to notify one of her parents that she intends to have an abortion, the trial court should authorize her to proceed without notification. TEX. FAM.CODE § 33.003(i). In applying this provision, it is important to bear in mind what may and may not be considered as part of a "best interest" analysis. As a general proposition, parents are only obligated under our laws to support their children until they reach the age of eighteen, and until they graduate from high school, as long as they are fully enrolled in school. *See id.* § 151.003(b).[1] Accordingly, although I would hope that parents continue to provide love and support to their children beyond the age of eighteen and to provide funds for an education beyond high school if the parents are able to do so, the law does not impose those obligations. Whether parents do or do not provide support for their children who are considered adults in the eyes of the law is a parental call, not a call for the courts in determining the best interest of a child.

Because the Legislature has drawn a clear line as to when parental obligations of support end, neither the trial court nor this Court may properly consider whether Jane Doe 4's parents would withdraw their emotional or financial support after she turns eighteen and graduates from high school if they were notified of her intent to have an abortion while she is a minor.

Jane Doe 4 has no legal entitlement to her parents' support once she reaches eighteen years of age and receives her high school diploma. Conversely, her parents would be within their legal rights to express their disapproval of her conduct by withdrawing further support once she is considered an adult. I cannot countenance a rule of law that would permit a minor to deceive her parents in order to avoid their expression of disapproval when those acts of disapproval are wholly within the parents' rights.

The Legislature has also clearly expressed that it is this State's policy that at least one of a minor's parents has the right to know when his or her child is about to undergo an abortion, with certain limited exceptions. *See id.* §§ 33.002, 33.003(i). That parental right continues until the child reaches her eighteenth birthday.

## II

Turning to the record in this case, more than one reasonable conclusion about how Jane Doe 4's parents would react if notified of her desire to have an abortion can be reached from her testimony that her parents withdrew their support of her sister when she was "seventeen or eighteen." A trial court could reasonably infer that Jane Doe 4's parents ceased supporting her sister while her sister was still a minor (seventeen), but an equally reasonable inference is that her sister was no longer a minor (eighteen) and had graduated from high school when her parents told her that she was on her own. Thus, the trial court was not required to conclude from the evidence that Jane Doe 4's parents would abandon her while she remains a minor. Accordingly, if this Court is to properly apply the abuse of discretion standard of review, it must uphold the trial court's failure to find by a preponderance of the

---

1. The Family Code provides:

    (b) The duty of a parent to support his or her child exists while the child is an unemancipated minor and continues as long as the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma until the end of the school year in which the child graduates.

    TEX. FAM.CODE § 151.003(b).

evidence that notification of one of Jane Doe 4's parents would not be in her best interest.

More importantly, appellate courts cannot conclude in each and every case in which a minor takes the stand and says that her parents will withdraw their support if notified of her intent to have an abortion that she has established as a matter of law that notification of a parent would not be in her best interest. Otherwise, there would be no need for the minor to attend a hearing before a trial court as our rules require. Indeed, there would be no need for a trial court or for a hearing of any kind. A minor could simply sign an affidavit, send it to a court, and her application would be granted instanter. That is not what the Legislature intended.

While I agree that a court cannot reject uncontroverted testimony from an interested witness that it is readily controvertible, clear, positive, direct, and when there are no circumstances tending to discredit or impeach it, the evidence in this case was not clear, it was not positive, and the circumstances certainly tend to discredit it. This was not the case in *Griffin Industries, Inc. v. Thirteenth Court of Appeals*, 934 S.W.2d 349, 352 (Tex.1996), in which an appellant established her indigence by offering evidence that she subsisted on government assistance with no other income and no evidence was offered to the contrary.

A trial court is uniquely situated to observe the demeanor of a minor seeking an abortion in a bypass proceeding. A trial court can observe her gestures, the inflections in her voice, and whether she believes her own assertions. *See, e.g., In re Jane Doe 1*, 57 Ohio St.3d 135, 566 N.E.2d 1181, 1184 (1991) (noting that "[a]bove all, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered

testimony'"). Trial courts must be given latitude to make weight and credibility determinations, particularly in a bypass proceeding, because a minor's testimony will often be readily controvertible. It is just that the law in most circumstances will foreclose any means for that testimony to be controverted.

The trial court saw and heard Jane Doe 4 testify. The court concluded that she had not met her burden of proof. This Court's decision in *In re Jane Doe 2*, 19 S.W.3d 278 (Tex.2000), regarding "best interest" within the meaning of section 33.003(i), did not announce any legal principles that would have changed the evidence Jane Doe 4 offered. Through her counsel, she clearly was attempting to establish that "notification would cause serious and lasting harm to the family structure" and that notification would affect "the relationship between the parent and the minor." *Id.* at 282. She simply failed to make the required showing. The shortcomings in her evidence do not justify a new trial:

> [R]emand in the interest of justice was not within [the court of appeals'] discretion. Under either [former] Rule 434 or Rule 505 Tex.R.Civ.P., it is well settled that an errorless judgment of a trial court cannot be reversed in the interest of justice. *An appellate court is not authorized to reverse the judgment of a trial court on the ground that the case has not been fully developed. It may only reverse for error committed at trial. Once an appellate court has concluded there is no evidence to support a necessary finding, it is not within its power to reverse the judgment and remand for further development of the same or similar evidence without finding some error in the judgment.*

*Sears, Roebuck & Co. v. Marquez*, 628 S.W.2d 772, 773 (Tex.1982) (citations omitted) (emphasis added). The evidence in this case supports the trial court's failure to find that an abortion without notification of one of her parents would not be in Jane

Doe 4's best interest. I would affirm the trial court's judgment.

## III

Jane Doe 4 also contends that she conclusively established that she is mature and sufficiently well informed to make the decision to have an abortion without notifying either of her parents. *See* TEX. FAM. CODE § 33.003(i). I agree with the Court that she did not do so. But I would affirm the trial court's failure to find that Jane Doe 4 is mature or that she is sufficiently well informed. Jane Doe 4 offered virtually no evidence on this issue.

As the Court explains, her testimony consisted almost exclusively of monosyllable responses to leading questions. She answered affirmatively when asked by her counsel if she realized that "in essence, what you are going to do is end a—a life that is already starting now." She also answered "yes" when asked whether she realized that there "are certain inherent dangers in performing any type of surgical procedure, including abortion." The only other evidence regarding her consideration of the ramifications of her decision to have an abortion was her response "I think so" when asked if she has had sufficient time to think about what she plans to do. Her efforts to demonstrate that she is mature or that she is sufficiently well informed fall so far short that a remand is not required in the interest of justice. It is clear from the record that she was proceeding virtually exclusively on the "best interest" ground in section 33.003(i) and that she was not making a serious effort to establish her maturity or that she was sufficiently well informed.

* * * * *

Because Jane Doe 4 did not conclusively establish any basis under section 33.003(i) for proceeding with an abortion without notification of either of her parents, the trial court's judgment was correct, as was the court of appeals' judgment affirming it. The record in this case requires that this Court affirm the judgment of the court of appeals. Because it does not, I dissent.