**In re Jane DOE 4.**

No. 00–0317.

Supreme Court of Texas.

April 11, 2000.

## OPINION

Justice HANKINSON delivered the opinion of the Court in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, Justice ABBOTT, Justice O'NEILL, and Justice GONZALES joined.

This is an appeal from a denial of a minor's application for an order allowing her to consent to an abortion without notifying either of her parents. *See* TEX. FAM. CODE § 33.003. Here, the minor did not prove as a matter of law that she is mature and sufficiently well informed to have an abortion without notifying her parents. Nor did she establish that the trial court abused its discretion in failing to find that notifying her parents would not be in her best interests. Accordingly, we affirm the judgment of the court of appeals.

Jane Doe is a pregnant, unemancipated minor. This is our second review of her application for a judicial bypass. In *In re Jane Doe 4*, 19 S.W.3d 322 (Tex.2000)(*Doe 4(I)*), we concluded that Doe had not established any of the statutory requirements for a judicial bypass and accordingly did not grant her application. *See id.* at 326–27. But because neither Doe, her attorney, nor the trial court had the benefit of our recent opinions in *In re Jane Doe*, 19 S.W.3d 249 (Tex.2000) (*Doe 1(I)* ), and *In re Jane Doe 2*, 19 S.W.3d 278 (Tex. 2000), which clarified the "mature and sufficiently well informed" and "best interests" requirements, we remanded to the trial court for another hearing. *See Doe 4(I)*, 19 S.W.3d at 326.

After our decision in *Doe 4(I)*, the trial court held another hearing, at which Doe claimed that: (1) she was mature and sufficiently well informed to have an abortion without notifying her parents; (2) notifying her parents would not be in her best interests; and (3) notifying either of her parents would lead to physical, sexual, or emotional abuse. *See* TEX. FAM.CODE

§ 33.003(i). The trial court denied her application, finding that she had not established any of the statutory grounds for a bypass by a preponderance of the evidence. The court also found that Doe was not a credible witness. Doe appealed to the court of appeals, which affirmed the trial court's order without opinion.

Doe appeals to this Court on two grounds. First, she argues that she established as a matter of law that she is mature and sufficiently well informed to have an abortion without notifying her parents. Second, she argues that the trial court abused its discretion in determining that notification would not be in her best interests. We will examine each ground separately.

 We review the trial court's finding on the "mature and sufficiently well informed" issue under a legal sufficiency standard. *See Doe 1(I)*, 19 S.W.3d at 253. Because Doe has the burden of proof, we cannot reverse the trial court's determination unless she establishes as a matter of law that she is mature and sufficiently well informed. *See id.* at 257.

In *Doe 1(I)*, we stated that a minor is mature and sufficiently well informed "when the evidence demonstrates that the minor is capable of reasoned decision-making and that her decision is not the product of impulse, but is based upon careful consideration of the various options available to her and the benefits, risks, and consequences of those options." *Doe 1(I)*, 19 S.W.3d at 255. At a minimum, a minor must make three showings to establish that she is sufficiently well informed. "First, she must show that she has obtained information from a health-care provider about the health risks associated with abortion and that she understands those risks." *Id.* at 256. This includes an understanding of the general risks and risks specific to the minor because of her health and stage of pregnancy. *Id.* at 256–57. "Second, she must show that she understands the alternatives to abortion and their implications." *Id.* at 256. "Third, she must show that she is also aware of the emotional and psychological aspects of undergoing an abortion...." *Id.* at 256.

We conclude that Doe has not made the first of the three required showings. We therefore focus on the evidence relevant to that requirement and need not address the other two. Although Doe spoke to a doctor about abortion, her testimony does not demonstrate as a matter of law that she understands the risks of having an abortion. Specifically, Doe testified that because of a past medical problem, she would have to undergo a different type of abortion procedure involving different anesthesia and resulting in different risks. But she was unable to explain how or in what way the procedures and risks would be different, thus demonstrating a lack of comprehension about the specific risks of the procedure to her. On this record then, the trial judge could have reasonably found that Doe was not sufficiently well informed. Because Doe has not established the contrary as a matter of law, we need not consider whether she has met the further requirement of establishing that she is mature as a matter of law.

 Doe also argues that the trial court abused its discretion in failing to find that notification would not be in her best interests. In making this determination, the "trial court should weigh the advantages and disadvantages of parental notification in the minor's specific situation." *Doe 2*, 19 S.W.3d at 282. To aid in this determination, we have listed five factors for the trial court to consider: (1) the minor's emotional or physical needs; (2) the possibility of emotional or physical danger to the minor; (3) the stability of the minor's home and whether notification would cause serious and lasting harm to the family structure; (4) the relationship between the parent and the minor and the effect of notification on that relationship; and (5) whether notification may lead the parents to withdraw emotional and finan-

cial support from the minor. *Id.* at 282. Because the determination must be made based on the specific facts of each case, these factors are not exhaustive. The trial court should therefore consider all relevant circumstances, including the minor's credibility, in making the best-interests determination. *Id.* at 282; *Doe 4(I)*, 19 S.W.3d at 325.

Doe offered two reasons why it would not be in her best interests to tell her parents about her pregnancy: her medical record and her parents' reaction to her older sister's pregnancy. Doe testified that a medical condition for which she was treated in years past led her physician to advise her she should not have a child. She told the court that her treating physician had advised her that having children would be risky and not in her best interests. Later in her testimony, however, Doe stated that she would like to have a family in the future, making no mention of these health risks as a possible impediment to that desire. Still later, when the court asked her for more information on the specific risks associated with her prior medical treatment, Doe testified that she had not spent much time discussing these risks with any doctor who might perform the abortion. Doe provided little more information on the risks particular to her health condition other than to explain that her medical history might dictate the kind of anesthesia she could use. While Doe's pre-existing medical problems may be probative of why an abortion may be in her best interests, the statute requires her to prove by a preponderance of the evidence that notifying her parents would not be in her best interests. *See* TEX. FAM.CODE § 33.003(i). If she does have a current health risk, then her physical needs and the potential physical dangers may weigh in favor of involving her parents in her decision.

On the other hand, Doe also testified that notifying her parents could cause harm to their family structure and potentially lead her parents to withdraw sup-

port. Doe testified that she feared her parents will cut off all financial and emotional support once they learn of her pregnancy because when her sister was in the same situation a number of years earlier, Doe's parents immediately ordered her to leave the home even though the sister was still a minor. Not only did her parents banish her sister from their home, but they have not spoken to her since. This type of potential disruption to Doe's family relationship may weigh against notifying her parents.

Considering all the circumstances, some of the evidence weighs in favor of Doe having to notify her parents, while some weighs against. The trial court could have determined that Doe's particular physical needs and the possibility of physical danger outweighed any potential disruption to Doe's family relationship. Keeping in mind that the factors we identified in *In re Jane Doe 2* are not exhaustive, on this record we cannot say that the trial court abused its discretion in failing to find that a judicial bypass was in Doe's best interests.

Doe did not conclusively establish that she is sufficiently well informed or that the trial court abused its discretion in failing to find that not notifying her parents was in her best interests. Because we have concluded that Doe has not established any of the statutory grounds for a judicial bypass, we need not review the trial court's credibility finding. We affirm the judgment of the court of appeals.

Justice HECHT filed a concurring opinion, in which Justice OWEN joined.

Justice HECHT, joined by Justice OWEN, concurring in the judgment.

The trial court correctly denied the minor's application in this case for permission to have an abortion without telling her parents, and the court of appeals correctly affirmed the trial court's decision; nevertheless, this Court remanded the case for

reconsideration,[1] just as it had done in three other parental notification cases all decided in less than a month's time.[2] After a second hearing, the trial court again denied the minor's application, and the court of appeals again affirmed. Now, at last, the Court is constrained to agree with the lower courts, but its reasons for doing so reflect a majority's continued antipathy toward the purposes of the Parental Notification Act,[3] the trial courts' discretion to weigh witnesses' credibility and determine facts in parental notification cases, and the limitations on appellate review in such cases. I concur in today's judgment, but for different reasons.

### I

Jane Doe 4 urges in this Court that her application for a judicial bypass should be granted on either of two grounds. The first is that she has established as a matter of law that she is "mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents", one of the statutory bases for granting an application.[4] I examine first the Court's analysis and then the record before us.

### A

The Court holds that Doe failed to show "that she has obtained information from a health-care provider about the health risks associated with abortion and that she understands those risks",[5] a requirement for being sufficiently well informed.[6] The Court's explanation for this conclusion consists, in its entirety, of the following two sentences:

Specifically, Doe testified that because of a past medical problem, she would have to undergo a different type of abortion procedure involving different anesthesia and resulting in different risks. But she was unable to explain how or in what way the procedures and risks would be different, thus demonstrating a lack of comprehension about the specific risks of the procedure to her.[7]

This summary of Doe's testimony is far from accurate. Doe's anonymity can be protected without mischaracterizing the record.

Doe testified that for three years she had been treated for a medical condition, but that she had discontinued the treatment about two years earlier. With the omission of any details that might identify Doe, here is her testimony in answer to questions from her court-appointed attorney:

Q [I]s there any other reason, medical or otherwise, why you believe this abortion is necessary?

A Well, the medical reason is—I am not exactly sure what the correct medical term for it is, but two years—well, two years ago, a doctor told me to never have any children because [of a condition I have. I was treated for about three years, and stopped the treatment about two years ago,] but it still—there is quite a few more complications with that. And if I was to have any kids, it would be very risky. That is it. Basically, what I'm trying to say is having kids would not be in the best interest is what the doctor said.

Q And that possibly it could cause some very serious health risks to you?

A Yeah. It could—of course, people in the past who had the same problem I

---

1. *In re Doe 4(I)*, 19 S.W.3d 322 (Tex.2000).

2. *In re Doe 1*, 19 S.W.3d 249 (Tex.2000); *In re Doe 2*, 19 S.W.3d 278 (Tex.2000); *In re Doe 3*, 19 S.W.3d 300 (Tex.2000).

3. Tex. Fam.Code §§ 33.001–.011.

4. *id.* § 33.003(i).

5. *Ante*, at 339.

6. *In re Doe 1(I)*, 19 S.W.3d at 256–57.

7. *Ante*, at 339.

did, only about 20 percent of them have died. There is not that many people out there. There is always a chance of the—having birth defects from the baby, giving it to the baby, a lot of premature births. That—the babies end up [with the same condition].

Doe testified that she had consulted with a physician about having an abortion and had told him of her condition. Later in the hearing, Doe responded to the following questions by the trial court:

THE COURT: When you went down and talked to the doctor [about an abortion], did you talk to him about the [treatment for the medical condition] that you had had earlier?

A I told him about the medical history that I have had in the past. Of course, with that, there is a—they ask you a series of medical questions, and I told him about that, which they have to do a different procedure. I'm not sure what it is, but they have to give you a certain kind of anesthesia for the abortion, which is due to the [treatment for the medical condition]. I'm not sure exactly how—or what it is called or—

THE COURT: What does that do to your risk of having an abortion?

A The risk is that if I—if something did go wrong, the main risk is never being able to have children, which is something I would like to have in the— in the very far future. There is—there is different—I mean, that—that is about the highest risk.

THE COURT: Okay. And did you talk to them about the effect of [discontinuation of the treatment two years earlier] and what risk that posed as far as pregnancy is concerned?

A A little bit, but mainly they just— you know, since you have been off of it for two years, that means [it has done its] job. Other than that, it's nothing more than what I have just told you.

Contrary to the Court's statement that Doe "was unable to explain how or in what way the procedures and risks would be different", Doe answered the trial court's questions fully. Doe told the trial court that the physician whom she consulted about an abortion had told her that her prior treatment would require a different procedure and anesthesia, but that the only risk was that she could not have children. The doctor who had treated her earlier had already warned Doe not to have children, so the risk of an abortion to Doe, as it was explained to her, was not great.

Contrary to the Court's conclusion, the deficit in Doe's testimony is not that she could not explain whether and how her prior treatment for a medical condition would affect her having an abortion; rather, the deficit in Doe's testimony is that on the whole—not just the small part about her prior treatment—it shows no depth of understanding that a minor should be expected to have before making the "grave and indelible"[8] decision to have an abortion. Presumably the Court would conclude that Doe had established her right to a judicial bypass if only she had been a little more specific about the risks in having an abortion posed by the prior treatment for her medical condition. This trivializes both the abortion decision and the exclusion of Doe's parents from that decision. Doe's application should be denied, not simply because she was not perfectly clear about a fact or two, but because her testimony in its entirety fell short of proof by a preponderance of the evidence, as I now show.

### B

Doe, age 17, testified that in deciding whether to have an abortion, she had consulted with a physician and counselors at an abortion clinic for about an hour, and had talked with her court-appointed attorney in his office on three occasions. She also said she had spoken with the father of

8. *Bellotti v. Baird*, 443 U.S. 622, 642, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*).

the child, who is one year her junior, and that he would support whatever decision she made. Her lack of counsel from any other sources—especially from persons who might be expected to give her a broader appreciation of her alternatives and their consequences—was reason enough for the trial court to deny her application. But her testimony reveals the barest knowledge of the realities of the choices confronting her.

Doe's testimony concerning the health risks of an abortion was entirely as follows:

Well, health risks involved are there is always a chance that you could die; a chance that you could never have children for the rest of your life; possible internal bleeding; blood clots. Although they are highly unlikely, it is always a possibility.

Her testimony concerning possible emotional trauma was no more extensive:

There is always a possibility of being emotionally traumatized, emotional scarring. They say you will always remember it for the rest of your life. It is—it is sometimes very hard on different people with different emotional levels.

She added only that if she suffered emotionally from an abortion, therapy was available, and she would seek it out.

Her testimony concerning the health risks of pregnancy and childbirth was the following:

There is always the chance of a miscarriage. There is different complications that could go wrong. There is always—there is still always the possibility of having internal bleeding throughout the entire pregnancy. And let's see. It is possible that the—with the—my age being premature birth and leading to problems with the baby if I was just to decide to keep it.

Finally, her testimony concerning her alternatives was the following:

I could keep the baby, raise it the best I could, which I feel would be pretty impossible. I'm pretty busy in everything I do. Adoption could be—I'm sure it will be well taken care of.... And then there is a abortion where it would be over with.

When this case was first before us, the Court stated: "Doe's evidence that she is mature and sufficiently well informed is very limited, consisting almost entirely of monosyllabic answers to conclusory questions posed by her counsel."[9] It now appears that Doe's attorney had good reason to lead her through her testimony at the first hearing: non-leading questions at the second hearing did not elicit much response. Having had a second opportunity to make her case, Doe's evidence is almost the same as before. The testimony quoted above—which is all the record contains on the subject of whether Doe was sufficiently well informed to have an abortion without telling her parents—does not reflect the careful contemplation that so serious a decision requires. It does not approach even the low standards the Court set in *In re Doe 1(I)*.[10]

### C

Asked by her attorney about her maturity, Doe was hesitant and repeatedly needed prompting. Toward the end of the hearing, she testified as follows:

Q Now, I want you to listen to these questions very carefully: After we have talked about all the things that have happened in your family and what you have done as far as going to the doctor, finding out the ramifications, both physical and psychological, regarding abortion and—and—and counseling with the people down there, talking to me on several occasions—we have gone through court already one time. We are back here again. Do you think that you are mature enough to understand all the

---

9. *In re Doe 4(I)*, 19 S.W.3d at 324.

10. 19 S.W.3d at 252–53.

physical, the psychological, the—the mental ramifications of having a child or not having a child?

A *I think so. I think I am mature enough* to—I have been told the different alternatives, the different facts. They—they—they basically educated me about my future with the baby or without the baby.

Q And is that—you believe you can do that without notifying your parents?

A *I think so. I—*

Q *Do you know so?*

A I do know so.

(Emphasis added.) A few minutes later her attorney returned to the subject of maturity:

Q And you wanted to do the mature, right thing [by seeking a judicial bypass]?

A That's correct.

Q And do you believe that you have done that?

A *I think so.*

Q *Do you know so?*

A I know so.

(Emphasis added.)

Doe also admitted to some ambivalence about her decision:

A I thought about it for a little while, and the more I thought how more complicated things would get and maybe things would change or maybe having the abortion wasn't the best alternative. But if I really put the cards out on the table and look through them, I—I—having a baby right now would probably stop 75 percent of what I want to do.

She reiterated that she was "pretty busy": "I know—I'm—like I said, I'm very busy. I have a lot of high goals, and having a baby would stop me from having them." Asked whether having a baby would not be the best thing *"in all probability right now"* (emphasis added), she answered, "Right."

The Court has refused to define "mature" within the meaning of the Parental Notification Act,[11] but the trial court in this case could well have concluded that a minor who was reluctant to carry her child to term because, at least in part, she was "pretty busy" was not mature enough to make the decision without parental guidance.

**D**

Thus, I agree with the Court, albeit for different reasons, that Doe did not conclusively establish as a matter of law that she was mature and sufficiently well informed to have an abortion without involving her parents.

**II**

The second ground Doe argues in this Court in support of her application is that notifying either of her parents would not be in her best interest.[12] The Court correctly concludes that Doe has failed to establish this ground as a matter of law also, but again, its reasoning is flawed.

The Court holds that Doe's fear that her parents would "kick her out of the house" weighs against telling them of her intention to have an abortion. Assuming that it would be in Doe's best interest to avoid such a reaction and obtain an abortion secretly, Doe's testimony about how her parents would respond to news of her pregnancy was in important respects equivocal. She described in more detail than at the first hearing how her parents had told her sister "to get out of the house" when she told them she was pregnant. They had not spoken to her in the years since, Doe said. When asked whether her parents' reaction toward her would be the same, she at first said, "I have a very good feeling that would happen," later added, "I strongly believe that would happen," and finally said the probability was "[a]bout 100 percent." Asked by her

---

**11.** *Id.* at 254.

**12.** Tex. Fam.Code § 33.003(i).

attorney whether her parents had "actually" told her that they would treat her the same way they had her sister if she became pregnant, she answered, "In a way," adding: "They say, you know, if you ever get pregnant, don't come to us. We're not going to help you, and you might as well leave." Asked when her parents had said that, she answered only that it had been when the treatment for her medical condition had stopped about two years earlier. The following testimony shows best Doe's equivocation throughout the hearing:

Q Now, listen to my question here, ma'am: Can you tell this Judge that if you are forced to notify your parents that you are seeking an abortion that they, in your mind and in all probability, will tell you to get out of the house and don't come back?

A (Pause) Yes. I mean, they have always been really strict with their ways. They set their laws. They—I know they—*I know they love me. I know they are always going to be there for me. I hope. But* if I was to inform them about this, I—*I'm afraid* that they would legally—or not legally. They can't legally disown me—but do the same thing that they did to me—or did to my sister. And I'm not ready for that.

(Emphasis added.)

In its first opinion in this case, the Court held that a minor's testimony can establish her right to bypass parental notification only if it is clear, direct, and positive.[13] Doe's testimony about her parents' likely reaction to being told of her pregnancy was more detailed at the second hearing than it was at the first hearing, but it was hardly clear or positive. At one point she was nearly certain that her parents would react very strongly, yet at another point she seemed certain that her parents love her and will always "be there" for her. Doe's testimony did not establish the probability of her parents' adverse reaction

such that the trial court was bound to treat it as a factor conclusively proven in favor of not telling Doe's parents. The trial court was certainly entitled to weigh Doe's concerns in deciding her best interest, but the court was also free to find against Doe, not merely because evidence of her medical condition counterbalanced evidence of her parents' reaction, as the Court concludes. The court was entitled to discount Doe's evidence of her parents' probable reaction because of its equivocal nature.

## III

There is another reason why the trial court's decision should be affirmed, one which the Court refuses even to mention. To be conclusive, a minor's testimony must not only be clear, direct, and positive; it must also be free of inconsistencies.[14] The trial court concluded that Doe's testimony was inconsistent, and that Doe was not entirely truthful. For this reason alone the denial of Doe's application should be affirmed.

On two important matters Doe gave conflicting testimony. At her first hearing she testified that she was eight weeks' pregnant. At her second hearing, exactly four weeks later, she testified that she was ten weeks' pregnant. It is possible, of course, that she was simply mistaken earlier, but she did not offer that explanation, or any other, for the discrepancy in her testimony. Also, Doe testified that the doctor who had previously treated her for her medical condition had told her "to never have any children". Doe offered that statement as reason to have an abortion. She even described the health risks her condition posed to her having a child, as noted above. Yet she repeatedly stated that she planned to have children in the future and gave no explanation why it would not be as risky then as now.

The trial court explained in its findings that Doe was "a very bright and intelligent

13. *In re Doe 4(I)*, 19 S.W.3d at 325.

14. *In re Doe 4(I)*, 19 S.W.3d at 325.

young lady who will say anything to convince this court to approve the waiver of parental notification. This determination undermines any testimony that might support one of the grounds for parental bypass." The trial court based its conclusion "on the totality of the evidence received during both of the hearings in this case as well as the demeanor of the applicant". The trial court then explained:

> The applicant's testimony concerning her [treatment for her medical condition], which ended some two years earlier, typifies her conscious or subconscious modification of the facts to achieve the desired conclusion. First, in the earlier hearing there was no mention of the [treatment] and the possible ill effects it might have on her pregnancy. It seems suspect to the Court that an applicant would come into court trying to prove that an abortion (without parental notification) is in her best interest and only mention such a health concern after she has been told that her first testimony was not good enough.

> Second, in one breath applicant cites the purported health concerns associated with the [treatment] as a factor she has considered to show that she is mature and sufficiently well informed to make this decision. However, in the next breath she discounts the same consideration by saying she does plan to have children in the future. This points to an inconsistency in the applicant's thought processes. She places such emphasis on these health concerns that it causes her to conclude that an abortion is in her best interest while she believes that the same health concerns would cause her to reach a different conclusion in the future.

This is precisely the kind of determination that trial courts must make in these cases and in any case in which a witness's credibility is in issue. The Court requires the trial courts to make findings regarding credibility in parental notification cases,[15]

15. *E.g., id.* at 325, n. 1.

then refuses to acknowledge them. However, the trial court's finding in this case serves as an example to other trial courts who conclude by a minor's demeanor and inconsistent testimony that she is not to be believed.

\* \* \* \* \*

The Court has finally reached the correct result in this case, but its opinion shows that it continues to minimize the importance of parental involvement in a child's decision to have an abortion and the trial court's crucial role in assessing a minor's credibility.