# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00303-CV

**Sarah J. R. Durham, Appellant**

**v.**

**Christopher M. Durham, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 395TH JUDICIAL DISTRICT**
**NO. 02-660-F395, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING**

# M E M O R A N D U M   O P I N I O N

Sarah J. R. Durham appeals from a divorce decree, arguing that it was improperly based on a mediated settlement agreement. She contends that the district court's judgment is erroneous because the court (1) improperly foreclosed review of her claims that the agreement was reached through fraud, coercion, intimidation, and duress; (2) improperly interpreted the terms of the agreement reached; and (3) incorrectly concluded that the agreement and decree were enforceable. We will affirm the judgment.

## BACKGROUND

After a mediation, the Durhams and their attorneys signed a written mediated settlement agreement and filed it with the district court. Mrs. Durham changed counsel and sought to revoke the agreement. Mr. Durham then filed a motion to enforce the agreement.

The court held a hearing at which Mrs. Durham contended that the court could not enter a judgment based on the agreement because she revoked her consent. The court denied the motion, concluding that the agreement stated that it was irrevocable. The court initially declined to hear Mrs. Durham's evidence about the overreaching and duress that compelled her to sign the agreement. The court heard testimony from Mr. Durham to support the divorce and judgment. After some discussion, the court then heard testimony from Mrs. Durham regarding the mediation. She testified that the mediator was biased against her, called her a liar regarding her statements about her job search, ignored her assertions that her husband was unfaithful, prevented her from going through a box of documents, and pressured her by asserting that she would not win or get a better deal at trial than she was getting at the mediation. She stated that the mediator incorrectly told her she was not entitled to spousal maintenance and also told her that she would not be able to maintain custody and move to Chicago; she said that he did not respond to her questions about the possibility of her moving to Dallas or Houston. Mrs. Durham said that the mediator yelled at her and at her attorney, who apologized for being unprepared for the mediation.

At the end of the hearing, the court granted the motion to enforce the agreement. The court stated that there was no evidence to overcome the express irrevocability of the mediation agreement, no evidence of any assets not disclosed during the mediation or distributed by the agreement, and no evidence of any specific alternative values for the family home not used by the mediator. The court also opined that the mediator correctly advised Mrs. Durham that a domicile restriction was likely. The court expressly found, based on listening to the parties, that there was no

2

overreaching, fraud, or duress during the mediation. The court found that the divorce was warranted and that the agreement by its nature represented a just and right distribution of the marital estate.

Mrs. Durham filed a motion for new trial, and testified at the hearing thereon about the mediator's behavior and inconsistencies between the facts, the agreement, and the judgment. She testified that the mediator used vulgar language in conversation with her and repeatedly told her that the agreement was better than she could expect at court. She said that the mediator refused to listen to her claims regarding infidelity and incompleteness or inconsistency of financial records relating to an investment account. She asserted that she learned for the first time at the mediation that her 401(k) account was used to secure the purchase of the Durhams' house. She also asserted that the decree did not distribute a joint account. She further alleged that, when the proposed distribution mentioned her getting credit for $20,000 as her interest in the house and the mediator discussed her getting $62,500 for her equity in the house, she believed that she would receive both amounts.

The court denied the motion for new trial and awarded Mr. Durham's attorney $1000 in attorney's fees.

## DISCUSSION

Mrs. Durham contends on appeal that the district court erred by rendering judgment in accordance with the settlement agreement. She contends that the court erred by improperly foreclosing review of her claims that the settlement agreement was wrongfully induced, by improperly interpreting the settlement agreement, and by improperly finding that the settlement agreement was enforceable.

3

Mrs. Durham argues that the district court improperly foreclosed consideration of whether she entered the settlement agreement due to fraud, coercion, intimidation, and duress. She contends that the district court disregarded her uncontroverted evidence that the mediation process was tainted and biased against her and enforced the agreement simply because it met the facial requirements for enforceability.

Mediated settlement agreements are subject to being invalidated if they are illegal or procured by fraud, duress, coercion, or other dishonest means. *See Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.). Parties can ordinarily withdraw from mediated settlement agreements before they are incorporated into judgments, subject to having the agreement enforced as a contract that complies with Texas Rule of Civil Procedure 11. *See id*. at 403. However, a mediated settlement agreement concerning dissolution of marriages and suits affecting the parent-child relationship ("SAPCR") is binding if the agreement (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. *See* Tex. Fam. Code Ann. §§ 6.602(b), 153.0071(d) (West 2002 & Supp. 2004). If a mediated settlement agreement meets these requirements, a party is entitled to judgment on the agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law. *Id*. §§ 6.602(c), 153.0071(e). But, like other contracts, such a mediated settlement agreement can be set aside if a party was induced to enter the agreement through unacceptable conduct like duress, fraud, or other dishonest or unfair tactics. *See Boyd*, 67 S.W.3d at 404-05. In *Boyd*, the court affirmed the district court's invalidation of a

4

settlement agreement on grounds that the husband failed to disclose all relevant assets of which he was aware despite swearing that he had. *Id*. at 404. The court held that a catchall phrase dividing equally all property not expressly disposed of by the agreement did not ameliorate the effect of the intentional nondisclosure of a $230,000 bonus earned during the marriage. *Id*. at 405. The court held that the husband's nondisclosure so undermined the adequacy of the negotiations as to render the settlement unenforceable. *Id*.

Mrs. Durham argues that the duress of her financial circumstances, the coercion of the mediator, and Mr. Durham's failure to disclose fully his assets combined to subvert her will and taint the negotiations sufficiently to render the settlement agreement unenforceable. Although she was an engineer by training, she had not worked since the birth of their child in 1996. Her only source of income at the time was the $1500 that Mr. Durham was paying her as child support. She testified that she had applied for work, but had not been hired. She testified that the mediator yelled at her five different times, refused to allow her to go through a box of documents showing infidelity and unaccounted-for financial transactions involving $63,500, accused her of lying about seeking work, discouraged her from going to trial by telling her that Mr. Durham would fare better there, prevented her from making telephone calls, and spoke with her lawyer separately without telling her what the conversations entailed. She testified that she felt intimidated and signed the agreement because the mediator convinced her it was the best she could get. She testified that she did not voluntarily sign the agreement or read the language warning that it was irrevocable. She testified that she believed that she had no choice but to sign the agreement.

The district court stated on the record at the end of the hearing on the motion to enforce the settlement agreement that the court did not find Mrs. Durham's testimony regarding these claims credible. After rejecting a claim regarding stock division that is not raised on appeal, the court stated:

> I find as a matter of fact that there was no evidence of any home appraisal so that I can determine whether or not the home appraisal used in the mediation was wrong.
>
> . . . . And I find as a matter of fact and conclusion of law that if the mediator gave her the advice that in this court a domicile restriction was a very likelihood, then the mediator gave her solid, sound advice.
>
> I do not find as a matter of fact based on my view of the evidence listening to the witnesses, the mannerism of the parties and the credibility of the witnesses that there was overreaching or fraud on any part, nor do I find that there was any duress as a finding of fact. Therefore there is no basis for fraud or overreaching claim to set aside the mediated settlement agreements.

The court then granted the motion to compel and signed the divorce decree.[1]

Although Mrs. Durham's testimony regarding her state of mind is uncontroverted, we do not find that the record supports overturning the district court's decision. The supreme court has cited with approval a holding that "uncontroverted testimony, even from a witness categorized as an expert, may be taken as true as a matter of law if it is clear, direct and positive, and is free from contradictions, inconsistencies, inaccuracies and circumstances tending to cast suspicion thereon." *Abrams v. Jones*, 35 S.W.3d 620, 627 (Tex. 2000) (quoting *Allright, Inc. v. Strawder*, 679 S.W.2d

---

[1] Although Mrs. Durham requested findings of fact and conclusions of law, the appellate record contains neither findings and conclusions nor a notice of late findings and conclusions. The failure to file is not, however, an issue in this appeal.

81, 82 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)). However, if uncontradicted evidence is unreasonable, incredible, or questionable, the fact finder is not required to award the relief requested. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990). The trial court acting as fact-finder is the sole judge of the credibility of the witnesses and is permitted to believe or disbelieve any evidence. *Burtch v. Burtch*, 972 S.W.2d 882, 888 (Tex. App.—Austin 1998, no pet.). We may not substitute our conclusions for that of the trier of fact, *see Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986), nor may we pass on the credibility of the witnesses or the weight to be given their testimony. *See Benoit v. Wilson*, 239 S.W.2d 792, 796-97 (Tex. 1951). While Mr. Durham might have called a witness to rebut the objective aspects of Mrs. Durham's testimony (*i.e.*, whether the mediator yelled or prevented her from looking at discovery), her testimony about how she felt is essentially irrebuttable; thus, the court did not have to accept her testimony even though it was not controverted. The district court expressly found Mrs. Durham's testimony regarding duress and coercion not credible.

We conclude that the district court did not reject Mrs. Durham's attempt to revoke the agreement simply because of the statement of irrevocability and did not foreclose consideration of the grounds for revocation of her consent to the judgment. Instead, the court heard her testimony about the circumstances of the mediation, but expressly rejected the attempt to revoke because the court did not find her claims of improper inducement credible.

Mrs. Durham also claims that the district court improperly interpreted the terms of the agreement. She complains that the plain terms of the agreement show conflict that exposes the absence of actual agreement. She claims that the disposition of property described in paragraph 8

7

of the agreement conflicts with the disposition described in an exhibit attached to the agreement, showing the absence of a meeting of the minds and rendering the agreement unenforceable. Paragraph 8, a handwritten paragraph in the agreement, provides as follows regarding the property to be awarded to Mrs. Durham, "W & H will divide all household items w/in 30 days, W awarded all her checking & savings acts, the 2000 Lexus, 50% of H & W stocks, bonds, 401K (see Exhibit "A" for distribution) W awarded $62,500 w/in 90 days as her reimbursement for community residence." Exhibit A, which was entitled "Proposed Property Division" before it was retitled "Exhibit A" states the fair market value of various community assets including stocks, 401(k) accounts, cars, and the community residence. It lists the value of the residence at $350,000, of which $250,000 is secured debt; Exhibit A lists the equity as being divided between Mrs. Durham ($20,000) and Mr. Durham ($80,000). In the divorce decree, the court awarded Mr. Durham the residence in exchange for his paying Mrs. Durham $62,500. Mrs. Durham contends that no evidence supports the conclusion that she forewent the $20,000 in equity listed on Exhibit A in exchange for the $62,500 payment listed in Paragraph 8 of the settlement; she contends that the agreement can easily be read to award her *both* the $20,000 in equity *and* the $62,500 payment. She argues that the district court lacked the power to decide that she agreed to receive only the payment.

We do not find the conflict that Mrs. Durham contends exists within the agreement. A court cannot disregard or insert terms into a settlement agreement. *In re Marriage of Ames*, 860 S.W.2d 590, 593 (Tex. App.—Amarillo 1993, no writ). The court is bound to accept the agreement of the parties. *Id*. In this case, the judgment reflects the statement in paragraph 8 of the agreement that Mr. Durham pay Mrs. Durham $62,500 "as her reimbursement for community residence." The

8

plain meaning of the term "reimbursement" indicates that the $62,500 is provided in exchange for Mrs. Durham's interest in the house, which was awarded to Mr. Durham. Exhibit A does not contradict that view. Under a plain reading of paragraph 8 of the agreement, Exhibit A illustrates only the disposition of the stocks, bonds, and 401(k) assets; the parenthetical "see Exhibit A" appears only after 401(k) and precedes the language regarding the reimbursement, indicating that the parenthetical does not apply to the residence reimbursement. Even if the agreement could be read to make Exhibit A relevant to the disposition of the residence, it indicates only the amount of Mrs. Durham's share of the equity interest ($20,000). Nothing in the agreement, Exhibit A, or the judgment indicates that the $20,000 value of Mrs. Durham's share of the equity interest in the house is an amount she is to receive in addition to the agreed-upon $62,500 "reimbursement for community residence." Exhibit A shows the value of her interest in the residence, while paragraph 8 of the agreement shows the amount she was awarded in exchange for surrendering that interest. If her equity in the house was listed on Exhibit A as $20,000 and the later-written paragraph 8 awards her $62,500, she received more than three times her share of the equity set forth on Exhibit A. Rather than supplying a missing term or imposing a resolution of ambiguity on the parties, the judgment simply effectuates the agreement.

Mrs. Durham finally complains that the agreement and the decree are not enforceable because the decree differs materially from the agreement. She asserts that the decree fails to address the disposition of the marital residence, that Exhibit A distributes to her $20,000 that is not accounted for in the decree, and that the decree fails to account for $37,500 that is distributed under the agreement. Contrary to her contention, the decree disposes of the residence as follows:

9

IT IS ORDERED AND DECREED that the residence located at 2600 Brunston Court, in Round Rock Texas 78681 is awarded to Respondent in return for him paying to Petitioner the sum of $62,500.00 within 90 days from the date of the signing of this decree. IT IS ORDERED AND DECREED that upon delivery of the said $62,500.00 to Petitioner that she will execute a Special Warranty Deed conveying her interest in the property to Respondent.

As discussed above, Exhibit A to the agreement does not address the disposition of the residence, and the $20,000 interest listed there is not an additional amount she is owed; the award in the agreement and the decree of $62,500 compensates her for her $20,000 interest described in Exhibit A. Finally, we cannot address her claims that $37,500 in assets are divided by the agreement but not by the decree because she does not tell us what those assets are or provide record citations showing these missing assets, either in her brief or in response to the statement in Mr. Durham's brief pointing out her failure to name the allegedly missing assets. Further, we find no assets missing from the decree.

## CONCLUSION

Having resolved all issues raised on appeal without finding error, we affirm the judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   March 25, 2004

10